THE STATE ex inf. JOHN T. BARKER, Attorney-General, at the relation and to the use of KANSAS CITY v. KANSAS CITY GAS COMPANY.

In Banc, February 10, 1914.

1. **MANDAMUS: Return: Motion to Quash Writ: Cotemporaneous: Practice.** Whether or not a motion to quash the original writ in mandamus is waived by a cotemporaneous return, is a question discussed in this case, but not decided, because the court had previously ordered the case set down for hearing on issues of law raised by the return and reply, separate from issues of fact, and stood informed at the time that the issues would be presented by a motion to quash and for judgment on the pleadings, and the case, having been briefed and argued on that theory, has progressed too far to justify a treading back and revocation of that order. It is not beyond all precedent to segregate a hearing of the issues of law from a hearing on issues of fact in mandamus, in a grave case which may fatally break on a law point necessarily involved, and if so, great expense, delay and labor attendant upon a hearing of the facts would be avoided.

2. ————: **Defective Pleading: Amendable.** If there are defects of form in the alternative writ in mandamus, such as lack of precision in averment or failure to show a definite, clear and explicit legal right or to aver that there is no other adequate remedy, then the right to amend exists. [Sec. 1864, R. S. 1909, a section sometimes overlooked.]

3. ————: **Discretionary.** The Supreme Court's constitutional jurisdiction to issue the writ of mandamus and to hear and determine the same, implies a judicial discretion to issue or withhold the writ.

4. ———: ———: **When Exercised.** The writ of mandamus is so far discretionary that it should be denied if a sound judicial discretion bespeaks its denial. It cannot be denied out of mere whim or arbitrariness, but it can be in the exercise of a sound, legal, regular discretion, quickened and guided by law.

5. ———: ———: **Extraordinary Emergencies.** The writ of mandamus is reserved for extraordinary emergencies. The test is not the power of the court to issue it, but the propriety of its issuance in the light of a wise discretion. It does not issue except in cases where the ministerial duty sought to be coerced is simple and definite, and not even then if the right is doubtful or there is another adequate remedy.

6. ———: ———: **Subject-Matter Contemplated by Public Utilities Act: Writ Denied.** The self-named "Public Service Commission Act," Laws 1913, pp. 557 to 561, is an elaborate and comprehensive statute, vesting the commission created by it with vast and flexible visitorial and administrative powers over public utility corporations of all kinds, and supplying it with full machinery to make discovery of all facts pertaining to the right of the public to enforce a demand for better service, to speedily determine such a controversy, and to enforce its orders; and being admitted to be a constitutional act, the court, in the exercise of its discretion to issue or withhold an inflexible writ of mandamus, refuses to issue its writ to compel a corporation holding a thirty-year franchise for distributing natural gas to Kansas City and its inhabitants for illuminating, fuel and mechanical purposes, to perform that service at all seasons of the year in quantity reasonably sufficient and in quality reasonably suitable for all such purposes at a given franchise rate, where the petition alleges a failure to perform that duty for a long time at all seasons of the year except in the summer months, and it appears from the return to the alternative writ that the franchise was not preclusive; that the possible failure of natural gas in accessible regions, with the return to artificial gas, was contemplated; that respondent is a natural-gas distributing corporation and not a natural-gas producing one, a fact recognized by the franchise; that the franchise contemplated an arrangement between respondent and certain pipe-line companies and gas-field-owning corporations for a gas supply for distribution, which arrangement was made with the relator city's approval; that the heart of the controversy was over the gas pressure, and respondent relies for its defense upon a failure of the supply obtainable by it from said allied companies whose gas-producing properties are in other States, and attributes their failure to supply it with gas to an exhaustion of the accessible gas fields, to the

insurmountable obstacles thrown in the way of a greater supply by the laws of other States and proceedings in their courts and Federal courts, and to the fact that many other cities had contractual arrangements for natural gas which lessened the supply; and where relator's reply denies the impossibility of performance of respondent's franchise duty to supply a sufficient pressure of natural gas and avers that the alleged impossibility is simulated. There having been no commissioner appointed to take evidence upon these controverted and interlacing, difficulties, the original writ is dismissed, because the said statute was intended to provide an efficient and speedy remedy for the complex grievances complained of, and the Utilities Commission is better equipped with ways and means to make the investigation necessary to a just solution than is the court.

## Mandamus.

PRELIMINARY WRIT QUASHED.

*John T. Barker*, Attorney-General, *A. F. Evans, Willard P. Hall* and *James W. Garner* for relator.

(1)  Respondent's assignors accepted the franchise and entered upon the performance of the duties imposed thereby, and respondent's assignors and respondent became obligated to supply all the natural gas required by relator and its inhabitants. This duty is specific, absolute and unconditional and its performance can be compelled by mandamus. Gas Co. v. State ex rel., 135 Ind. 54; Gas Co. v. Anthony, 26 Ind. App. 321; 2 Morawetz on Priv. Corp., sec. 1129; 2 Beach on Priv. Corp., sec. 835; Olmstead v. Aqueduct, 47 N. J. L. 311; Norman v. Gas Co., 52 Mich. 499; Gas Co. v. Lowe, 52 W. Va. 662; Hangen v. Light Co., 21 Ore. 423; People v. Railroad, 104 N. Y. 58; Vincent v. Railroad, 49 Ill. 33; Loan & T. Co. v. Hemina, 17 Am. L. R. 266; Miller v. Gas Co., 206 Pa. St. 254; Commonwealth v. Gas Co., 2 Kulp. 499; State ex rel. v. Street Railroad, 10 Tex. Civ. App. 12; Commission v. Railroad, 77 N. Y. Misc. 487. From the foregoing authorities the following proposition must be self-evident: If respondent has the right to supply a cubic foot of gas, it is bound in law to supply all the gas relator and its inhabitants

require. It cannot legally supply only what it wants to supply, but must supply all that relator and its inhabitants want. The general rule is well established that franchises granted by cities to public service corporations to use their streets for street railways, gas, water, telephone and other like purposes, are granted by the cities as agents of the State, and are something more than mere contracts; they have the same effect in law as though granted by the State directly, and can be enforced by mandamus. State ex rel. v. Weatherby, 45 Mo. 17; State ex rel. v. Railroad, 140 Mo. 539; Railroad v. Sioux City, 138 U. S. 107; Wright v. Nagle, 101 U. S. 791; Selectmen v. Railroad, 197 Mass. 270; Railroad v. Sioux City, 78 Iowa, 367; Cleveland v. Railroad, 194 U. S. 517; State ex rel. v. Railroad, 72 Wis. 612; Detroit v. Railroad, 56 Fed. 867; Detroit v. Railroad, 95 Mich. 456; Citizens Ry. Co. v. Belleville, 47 Ill. 388; Grosse Pointe v. Railroad, 130 Mich. 363; Lansing v. Railroad, 109 Mich. 121; People ex rel. v. Railroad, 178 Ill. 594; 27 Am. & Eng. Ency. Law (2 Ed.), 15, 17; Cleveland v. Railroad, 194 U. S. 517; Fath v. Railroad, 105 Mo. 535. (2) The petition for mandamus and the alternative writ are both strictly within the specific and absolute duty of respondent. (3) If we are correct in our position that the franchise imposed upon respondent the obligation to supply relator and its inhabitants with all the gas they want, there is nothing in the public service statute that relieves respondent of that obligation. Manifestly, there is no conflict between the franchise as construed by us and the provisions of the statute. It is not unjust or unreasonable to compel a gas company to furnish an adequate supply of gas to a city and its inhabitants, if physically possible. The question of profit is immaterial. There is nothing in the statute that relieves a gas company of such pre-existing obligation. The statute was not intended to deprive the public of any portion of their existing rights. It was not intended to

relieve public service corporations of any of their duties and obligations, but it was intended to regulate such corporations, and to compel them to do their full duty to the public. It is clear that at that time respondent had no power to occupy the streets of relator city without its consent. The Constitution of Missouri contains a provision prohibiting the General Assembly from granting to any street railway company the right to occupy any streets of any city without consent. The same effect exists wherever and whenever a public service corporation must obtain the consent of a city in order to occupy its streets and operate a plant for any kind of public service. Wherever such a condition exists, the courts quite uniformly hold that the public service corporation's power comes from the Legislature, but that the right to exercise such power comes from the city; that the power of the city to give its consent includes the power to refuse this consent, and that this latter power includes the power to give its consent on such terms and conditions as it may see fit to impose, provided that they are reasonable and legal; that the power granted to the corporation by the Legislature and the right to exercise this power given by the city, are both powers coming from the State, of equal dignity and together constitute the corporation's charter. Railroad v. Kirkwood, 159 Mo. 239; Kansas City v. Railroad, 187 Mo. 146; Philadelphia v. Railroad, 3 Grant (Pa.), 403; Railroad v. City, 14 Pittsburg L. J. (N. S.) 259; Philadelphia v. Railroad, 143 Pa. St. 444; Allegheny City v. Railroad, 159 Pa. St. 411; Detroit v. Railroad, 95 Mich. 456; Grosse Pointe v. Railroad, 130 Mich. 363; Township v. Water Co., 53 N. J. Eq. 601; Gray v. Traction Co., 56 N. J. Eq. 463; Gedke v. Railroad, 43 App. Div. (N. Y.) 514; 27 Am. & Eng. Ency. Law (2 Ed.), 21-22; 3 Elliott on Railways, secs. 1081 and 1096; Nellis on Street Surface Railroads, p. 104; 2 Dillon on Mun. Corp., sec. 706; Detroit v. Railroad Co., 56 Fed. 867; State ex rel. v.

Railroad, 62 Wis. 612; Cleveland v. Railroad, 194 U. S. 534. Where a city, possessed of the power to regulate public service corporations, exercises its power of compulsory regulation, the effect is the same as that of statute; the ordinance is subject to repeal thereafter, either by the city itself, or by the Legislature; there. is no element of a contract in it. But it is different where a city possesses the power to grant a franchise, and in the franchise ordinance itself inserts provisions regulating the company and its business. In such a case the ordinance constitutes a contract between the city and the company, and if in a form to bind both parties it suspends the power of both the city and State to regulate the company, contrary to the terms of the contract during the life of the franchise. Thus in the matter of rates: The regulation (compulsory regulation) of the rates of a public service corporation is a prerogative of sovereignty, and cannot be exercised by a city except by authority of the State. It is firmly settled that a city in a franchise granted by it can fix the rates which the company can charge, and thereby suspend the power of the State for a definite reasonable time to reduce those rates by compulsory regulation. St. Louis v. Gas Co., 70 Mo. 69; St. Louis v. Gas Co., 102 Mo. 472; Cleveland v. Railroad, 194 U. S. 517; Cleveland v. Railroad, 201 U. S. 529; Pittsburg v. Waterworks Co., 206 U. S. 496; Water Co. v. Omaha, 147 Fed. 1; Detroit v. Railroad, 184 U. S. 368. Respondent has a valid franchise, and it legally fixed minimum rates, which cannot be impaired by the city or State. If this is true, maximum rates are also legally fixed, and cannot be impaired by the State. The right of relator to fix maximum rates as a condition of the franchise is unquestioned. The rates thus fixed are as binding as though named in the charter, and are binding upon respondent. Railroad v. Osborn, 193 U. S. 20; Railroad v. Kentucky, 183 U. S. 503. The commission has no power, under the provisions of the.

statute, to grant franchises to public service corporations, and such corporations must still obtain from the cities and towns of the State the power to occupy their streets. It results from this fact, in view of the settled rules established by the authorities hereinbefore cited, that in granting franchises a city can fix maximum rates and require a minimum amount of service, and that these conditions cannot be changed in any degree by the commission. Blodgett v. Railroad, 192 Mass. 106. Requirements of public service corporations imposed by pre-existing franchises are not affected by the statute. There is absolutely nothing in the statute indicating any intention to impair the force and effect of such obligations. No such intention surely will be inferred. (4) The franchise does not limit respondent's obligation to supply gas to the gas supplied to it by the supply companies mentioned in the franchise. (5) The provisions of the act creating the State Public Service Commission do not furnish such an adequate legal remedy as to bar the remedy by mandamus for the enforcement by public service corporations of their specific legal obligations. (a) The rule is firmly established that if a statute creates a new remedy, and does not make the new remedy exclusive, it does not bar the remedy by mandamus. The act in question here expressly provides that its provisions shall be supplemental and not exclusive. Sec. 139 of the act. In view of this provision of the act, its remedies are supplemental and not exclusive, and do not bar mandamus. 19 Am. & Eng. Ency. of Law (2 Ed.), 749; State ex rel. v. Stearns, 11 Neb. 104; State ex rel. v. Railroad, 29 Neb. 421; People v. Railroad, 74 N. Y. 302. (b) The statute in question creates no legal remedy before the public service commission. The only legal remedy created by the act is one to be prosecuted by the commission in the circuit courts of the State. This remedy is not exclusive, and does not bar the remedy by mandamus in this court. (c) The rule is that

the other remedy does not bar the remedy by manda-
mus unless it is as direct, as speedy and as adequate
as the remedy by mandamus. The other remedy does
not bar mandamus unless it has the force and effect of
a decree for specific performance. What if the com-
mission could make an order directing respondent to
do its legal duty, the order would not be self-enforcing.
Its enforcement could be compelled only by suit in
some circuit court, with all the delays incident to such
a suit, including those due to an appeal to this court.
26 Cyc. 171, 172; 19 Am. & Eng. Ency. Law (2 Ed.),
746; State ex rel. v. Renick, 157 Mo. 292; State ex
rel. v. Sale, 153 Mo. App. 273; County Commr's v.
Hunt & Co., 33 Ohio St. 169; People v. Mayor, 10 Wend.
395; People v. Mead, 24 N. Y. 123; English v. Super-
visors, 19 Cal. 172; State v. Forney, 36 Neb. 537; Board
v. Aspinwall, 24 How. (U. S.) 376; State ex rel. v.
Moore, 40 Neb. 854; Willard v. Stearns, 11 Neb. 104;
State v. Spicer, 36 Neb. 469; State ex rel. v. Railroad,
27 Neb. 694. (d) If there is any doubt about the
adequacy of the remedy before the commission, the
doubt ought to be resolved in favor of the issuance of
the mandamus. Merrill on Mandamus, sec. 53; Ottawa
v. People ex rel., 48 Ill. 240; Baker v. Johnson, 41
Me. 15; Clark v. Miller, 47 Barb. (N. Y.) 43. (e) If
it be said that the public service commission could bet-
ter ascertain and determine the possibility of respond-
ent to supply gas, we answer: Why ascertain the
ability of respondent to supply gas until its duty to do
so is determined? In what way can the commission
better determine the question than a commissioner ap-
pointed by this court. Doubtless in any hearing before
this court's commissioner, relator would have the aid
and assistance of the commission's experts. (6) The
rule is that mandamus will not lie to compel a series of
continuous acts. But the courts hold that mandamus
will lie to compel public service corporations to do
their continuous duty. The writ does not go to such a

corporation to perform their duty once, or for a whole day, or week, or month or year, but continuously. State v. Railroad, 29 Conn. 538; Gates v. Railroad, 53 Conn. 333; Railway Commrs. v. Railroad, 63 Me. 269; Worcester v. Railroad, 4 Metc. (Mass.) 564; In the Matter of Loader, 14 Misc. (N. Y.) 208; People v. Railroad, 28 Hun, 543; Paige v. Railroad, 178 N. Y. 114; Trust Co. v. Railroad, 139 Fed. 865.

*Gage, Ladd & Small* and *Scarritt, Scarritt, Jones & Miller* for respondent.

(1) The alternative writ should show that relator has no other adequate remedy. There is another adequate, specific remedy in this case, by application to the Public Service Commission under the Public Service Act, which was approved March 17th, and took effect April 15, 1913. Therefore, the writ should be denied. Laws 1913, p. 557 et seq., especially art. 4, relating to gas companies. State ex rel. v. Ross, 245 Mo. 44; State ex rel. v. Hudson, 226 Mo. 266; State ex rel. v. Thurman, 232 Mo. 130; State ex rel. v. Bridge Co., 206 Mo. 74; State ex rel. v. Homer, 150 Mo. 325; State ex rel. v. Smith, 104 Mo. 661; State ex rel. v. Marshall, 86 Mo. 488; People v. Interurban Co., 177 N. Y. 296; People v. Railroad, 172 N. Y. 90; State v. Railroad, 53 Fla. 650; 26 Cyc. 175; Merrill on Mandamus, sec. 51; Tapping on Ex. Rem., secs. 62, 69; Moses on Mandamus, secs. 17, 18, 208; High on Ex. Rem., sec. 16; 2 Spelling on Ex. Rlf., sec. 1374; 19 Am. & Eng. Ency. Law (2 Ed.), 245. (2) The remedy before the Public Service Commission is exclusive because the commission would have to approve any additional investment or expenditure required to supply the gas demanded. Sec. 72 to 80, Public Service Act. The writ, should therefore be denied. Merrill on Mandamus, sec. 58. (3) The fact that the petition for mandamus in this case was filed April 12, 1913, and the rule to show cause or alternative writ, issued April 14, 1913, and that the

Public Service Law, although theretofore signed and approved by the Governor, did not, by its terms, take effect until April 15, 1913, does not alter the rule stated in the preceding paragraphs. High on Ex Rem., sec. 475; 26 Cyc. 458; Merrill on Mandamus, sec. 279; State ex rel. v. Weeks, 93 Mo. 499. (4) The reply alleges that the United Gas Improvement Company is the principal and must comply with the writ of mandamus prayed for, if issued. As that company is not a party here, this proceeding must necessarily be dismissed. Merrill on Mand., secs. 234-5; State ex rel. v. Cottengin, 172 Mo. 134; 19 Am. & Eng. Ency. Law (2 Ed.), p. 753-b; State v. Richards, 50 Fla. 284; McKinnen v. Wolfe, 50 So. 511; People ex rel. v. Stewart, 77 App. Div. (N. Y.) 181; People ex rel. v. Common Council, 78 N. Y. 33; High Ex. Rem., sec. 48. (5) Especially can the rights of third parties not be invaded by a writ of mandamus in this State since they can make no return to a writ not directed to them, and cannot interplead, no matter how much they are interested. State ex rel. v. Burkhardt, 59 Mo. 78. (6) The reply alleges that the respondent is a mere agent and instrument of the United Gas Improvement Company, i. e., has no power of its own to comply with the writ prayed for. Therefore, the proceeding should be dismissed. Territory v. Sudath, 110 Pac. 1038; Merril on Mand., secs. 234-5. (7) (a) Respondent's obligation, under its franchise to supply natural gas, is not absolute. It is only required to use reasonable diligence to do so. There is no allegation in the alternative writ that respondent failed to exercise such diligence. It, therefore, states no cause of action. Gas Co. v. Kansas City, 198 Fed. 503. (b) Under the law, independent of the franchise, the service demanded of respondent can only be just and reasonable. Public Service Act, sec. 68, par. 1 and sec. 127. There are no allegations in the alternative writ to show that under existing circumstances the service demanded is ''just and

reasonable." (8) Respondent's franchise, section 20, permits, if not requires, it to take the natural gas, with which it supplies relator and its inhabitants, from certain supply companies or their assigns. There is no allegation that it ever failed to do so; no cause of action is, therefore, stated. Gas Co. v. Kansas City, 198 Fed. 500. (9) It is not alleged in the petition or alternative writ that natural gas is reasonably accessible and that respondent is still warranted in supplying natural gas under the terms of its franchise to said city and its inhabitants. If not, then by the express provisions of section 14 of the franchise respondent is not required to furnish natural gas at all, but may furnish artificial gas. Gas Co. v. Kansas City, 198 Fed. 500. (10) It is nowhere alleged in said alternative writ that said city ever passed any ordinance as required by section 5 of respondent's franchise, fixing the pressure of gas to be maintained by respondent, or that the pressure so fixed by such ordinance was reasonable and practicable. Until then the pressure of gas furnished is within the discretion of the respondent and mandamus will not lie. People v. Railroad, 172 N. Y. 90. (11) Until a valid ordinance is passed by the city, providing a reasonable and practicable pressure, as required by section 5 of its franchise, and a failure to comply therewith, the respondent has not failed to comply with its contract as to the pressure of gas furnished and mandamus will certainly not lie as long as respondent complies with its franchise. (12) Until the city passes a valid ordinance prescribing a reasonable and practicable pressure at which respondent must furnish gas, in conformity to said section 5 of respondent's franchise, there is no specific, definite duty in that regard imposed by law upon respondent, and, therefore, mandamus will not lie. Mandamus lies only to enforce ministerial duties which leave nothing to discretion and such ministerial duty must be a simple and definite duty arising under conditions admitted, or proved to exist

and imposed by law. State ex rel. v. Hudson, 226 Mo. 265; State ex rel. v. McIntosh, 205 Mo. 610. (13) The relief demanded by the relator is entirely beyond the function of the writ of mandamus. It would require the court to superintend the whole business of respondent with a multitude of people. People ex rel. v. Interurban Ry., 177 N. Y. 301; State ex rel. v. Commissioners, 61 So. 370. (14) The respondent cannot be mandamused to supply natural gas generally to said city and its inhabitants, because its franchise is simply permissive. Railroad v. State, 90 Tex. 520. (15) It is well settled that the petition and alternative writ must allege facts showing that it is within the power legally and otherwise of respondent to perform the act or thing demanded. There is no allegation of that kind in said petition or writ. Cozzens v. Ditch Co., 84 Pac. 342; State v. Harrington, 93 N. E. 1; Bangor v. Penobscot Co., 8 Me. 294; Commissioners v. State, 42 Kan. 327; State v. Sommerset, 44 Minn. 549; Hall v. People, 57 Ill. 316; 2 Spelling, Ex. Rem., sec. 1645; 26 Cyc. 433-37; State ex rel. v. Associated Press, 159 Mo. 421; Merrill on Mandamus, sec. 57; Moses on Mandamus, p. 204; High, Extr. Leg. Rem. (3 Ed.), sec. 13; 14 Am. & Eng. Ency. Law (1 Ed.), 106. (16) It is well settled that mandamus will not lie unless relator's right thereto is clear, plain and not doubtful. State v. McIntosh, 205 Mo. 610; State v. Bridge Co., 206 Mo. 4; 26 Cyc. 146. (17) This court should take judicial notice of the failure of natural gas in the gas fields accessible to Kansas City. State ex rel. v. Gas Co., 163 Ind. 48.

LAMM, C. J.—*Mandamus—Original proceeding.*— To our alternative writ respondent made return and to that return relator's reply came in. There is pending an application by relator for the appointment of a commissioner to take evidence and make findings of fact and law. There are also pending respondent's motion to quash the alternative writ and for judgment on the

pleadings and admitted facts, as well as relator's motion to strike out the latter motion and in aid of the application to appoint a commissioner.

I. *Of the motion to strike out.* Respondent's return, in some material features, contains the same or equivalent matter as its motion to quash and for judgment on the pleadings and admitted facts. Relator's motion to strike out raises a question of practice, viz., whether a motion to quash (cotemporaneous with a return in mandamus) is allowable practice? In other words, technically, can they stand together, does the return not waive the motion precisely as an answer waives a demurrer? The question must be ruled with the following in mind, viz.:

In this case we made an order to appoint a commissioner to take evidence and report his findings of fact and law, but, on being further advised, we set that order aside on a showing made. Thereby it was made to appear, first, that questions of law were in the case on the very face of the alternative writ, return and reply that if ruled in whole or part in matter of substance for respondent would result in quashing such writ. Second, it was made to appear by certain agreements of counsel in writing that (at least by implication) they took the same view of the matter and joined in invoking a judgment on law issues. It is not necessary for us to say whether that implication, now questioned by learned counsel for relator, was just or not. This, because: We by our further order set the cause down for a hearing on questions of law, reserving issues of fact (if reached) for proceedings at the foot of our judgment on issues of law. It must be admitted such course is not a favored one. It splits a cause into two hearings and for obvious reasons we have been inclined to allow only one. But, *contra,* such course cannot be said to be unreasonable in a grave matter, as here, where the case may fatally break on a law point

necessarily involved, where an argument on the law seems desirable and where great expense, delay and labor attend a hearing on the facts, all of which expense, labor and time may be wasted if the cause eventually ride off on a law point springing on pleadings and admissions. Nor can such course be held to be without precedent. [State ex inf. Hadley, Attorney-General, v. Delmar Jockey Club, 200 Mo. 34.]

True it is that in the Delmar Jockey Club case there was no return raising issues of facts when the demurrer, heard on briefs and argument, was ruled, and that leave was given to file one thereafter. But that concession does not answer the practical question, viz.: Shall this court, in any case on any showing made of emergency and gravity, hold two hearings, one on law issues and one on issues of fact? The Delmar Jockey Club case is a precedent on that question—a precedent to be followed only with nice discrimination, to meet the mold and pressure of the concrete case and not mechanically and automatically in all cases.

Look at the matter from another angle. The practice has grown up in this court of raising questions of law side by side with issues of fact in the return in mandamus. We need not stop to discuss that practice from the standpoint of either reason or authority. In this case we take it as we find it and let it go at that. Respondent followed that practice, and *inter alia,* in its return challenged relator's right to a writ on certain issues of law. Nothing elsewhere in the return or in the reply waived those issues or set them at rest. The so-called motion to quash and for judgment on the pleadings and admitted facts, in effect, makes profert of them in a bundle and invokes a ruling. Now, it must be plain that, either by virtue of the motion, as a motion, or by virtue of issues of law being in the case on the return, at some time and in some form those issues must either be threshed out and settled, or blinked. In this case we ordered them set down for a hearing

separately from issues of fact.  This for reasons then and now appearing sufficient.  We stood informed at the time that the issues would be presented by a motion to quash and for judgment on the pleadings.  Having set down the hearing with that knowledge, our order is in the nature of a former ruling on the real question underlying the motion to strike out.  So, too, the case is briefed and presented in obedience to that order. In that view of it the cause has progressed beyond the point where we should lightly tread back and overturn that order.  We are of opinion that we need not rule in the instant case on the one narrow technical question whether a motion to quash the writ can live in the face of a return raising only issues of fact.

In view of all the premises the questions here are much broader, as indicated, and should be ruled against relator.

We leave the matter with a cautionary observation in order that the ruling just made may not rise to vex us in the future, viz.:  We do not rule that if a respondent should stand here on a motion to quash our provisional writ and for judgment on the pleadings and admitted facts in a mandamus suit, such respondent would be allowed as of course (if cast on his motion) to *then* have a hearing on the merits.  Such ruling would invite a swarm of interlocutory hearings consuming time, breeding delay and would be found in practice to be otherwise than useful.  All we rule is that it is not beyond all precedent to segregate one hearing from the other in a case crying out for it, and permit both if in the exercise of a sound discretion both appear sensible.  This ruling disposes of the concrete question here on this record.

Let the motion to strike out be overruled.

II.  *Of the motion to quash our alternative writ and for judgment on the pleadings and admitted facts.* (a)  There are a group of questions raised on this mo-

254 Mo. 34

tion that go to the form of the alternative writ, or to mere amendable matter. For instance: generality of language (following the petition therein); lack of precision in averment; failure to show a definite, clear, explicit legal right; failure to aver there is no other adequate remedy; dealing in mere conclusions of law; failure to allege that, under existing circumstances and under the franchise of respondent, the gas service required of it by the writ is just and reasonable, or possible and within respondent's power; the affirmative showing made by the pleadings (and not contradicted) that the right to a writ is at best doubtful, is beyond the legitimate function of so hard-and-fast a remedy as a writ of mandamus, is in violation of respondent's franchise in the matter of furnishing natural gas, which is not absolute but permissive and made to depend on circumstances; and so on and so on.

It is aptly pointed out by relator that if defects of form of that ilk exist (which it denies) then the right to amend exists and the case ought not to break irrevocably, but leave to amend should be given. We agree to that view of it. Agreeable thereto is the statute, Revised Statutes 1909, section 1864 (a section regulating mandamus not found in the article of the Code on that head and that has been sometimes overlooked). [State ex rel. v. Hudson, 226 Mo. l. c. 264, et seq.]

In our view none of the questions indicated is necessary to a disposition of the case, however excellently briefed and argued; hence they will be reserved.

(b) The one question left that may be determinative of the case, hinges on whether (in the exercise of a sound discretion) we should cut behind an act, self-named "Public Service Commission Act," passed by the 47th General Assembly, with an emergency clause putting it in force April 15, 1913 (Laws 1913, pp. 557 to 651, inclusive), and assume jurisdiction in the first instance.

A more pithy name for that act would be Public Utilities Act and we will use that for convenience.

After a painstaking consideration of that question in all its bearings, we are of opinion that, in the first instance, as here, we should not take jurisdiction. This is so, because:

·(1) In the first place (by way of a generalization), whilst the Constitution gives us‾ original jurisdiction of the extraordinary remedy of mandamus (Constitution, art. 6, sec. 3), i. e., power to issue the writ ''and to hear and determine the same,'' and whilst it follows inevitably that we may not renounce or shear away one iota of that constitutional power, nor may the lawmaker deny or impair it. in whole or part by his enactment, yet the dominating question of discretion attends the grant of power, and is left wide open and to be reckoned with in all discretionary writs. To use a homely figure of speech, discretion follows that particular grant of power as certainly as tock follows tick in the swing of the pendulum of the parlor clock.

(2) In the next place (still further by way of a generalization) it is uniformly held that a writ of mandamus, though it has somewhat lost its sometime high prerogative quality and sanction, is yet in so far forth a discretionary writ that it should be denied if a sound (that is, judicial) discretion bespeaks that course. [State ex rel. v. Gibson, 187 Mo. l. c. 555 et seq.; State ex rel. v. Bridge Co., 206 Mo. l. c. 133, and authorities cited, among them those infra.] Such discretion must not be measured by the yardstick of mere whim, arbitrariness, humor, fancy. It must be sound, legal, regular, quickened and guided by law. Subject to the limitations thus foreshadowed, the rule is that ''whether a writ of mandamus shall be issued, is in every case a matter resting largely in the discretion of the court, and depends upon all the surrounding facts and circumstances.'' [Morawetz, Priv. Corp. (2 Ed.), sec. 1134;

High, Ex. Leg. Rem. (3 Ed.), sec. 9; Merrill on Mand., secs. 64, 67.]

(3) In the next place (and yet by way of generalization) a writ of mandamus has been justly denominated a hard-and-fast writ, an unreasoning writ, a cast-iron writ, the right arm of the court. It is essentially the exponent of judicial power and hence is reserved for extraordinary emergencies. It does not issue except in cases where the ministerial duty sought to be coerced is simple and definite, arising under conditions admitted or proved and imposed by law. It does not issue where the right is doubtful or where there is another adequate remedy. The test is (not the *power* of the court to issue a writ, but) the propriety of its issuance in the light of a wise discretion. [State ex rel. v. Hudson, 226 Mo. l. c. 265 et seq.; State ex rel. v. Bridge Co., 206 Mo., supra; State ex rel. v. Francis, 95 Mo. l. c. 57; State ex rel. v. Governor, 39 Mo. 388.] There are other guides than those set down above, but the foregoing suffice for the purpose of this case, and in their light this question must be examined and the problem solved.

Looking to the application of those general principles we have progressed to a place where it is necessary to consider the relief sought by the writ together with the scope of the Public Utilities Act.

(4) Relator sues to compel a gas corporation holding a thirty-year franchise for natural gas distributing service to Kansas City and its inhabitants for illuminating, cooking, heating and mechanical purposes, to perform that service at all seasons of the year in quantity reasonably sufficient and in quality reasonably suitable for all such purposes at a given franchise rate. The alternative writ, following the petition, alleged a duty to render such service and a failure to perform in certain seasons of the year, to-wit, except in the summer months. Enough appears to show that the alleged dereliction was of long standing and the contro-

versy inflamed and far-reaching. The return and the reply thereto are much too long to even summarize here at the expense of the State for publication. Suffice it to say that, sifting out admissions from the denials, and attending to both, it sufficiently appears that the gas franchise was not preclusive; that the possible failure of natural gas in accessible regions (with a return to the use of artificial gas) was contemplated, or, at least, provided for in such contingency; that respondent is a natural gas distributing corporation and not a natural gas producing corporation, a fact recognized by the franchise; that the franchise contemplated an arrangement between respondent and certain pipe-line companies and gas-field-owning corporations for a gas supply for distribution, which arrangement was made with relator's approval; that the heart of the controversy was over gas pressure; that respondent relied for its defense to the citation to show cause on a failure of pressure because of the failure of the supply obtainable by it from its allied corporate producers whose homes and gas properties were in other States, because of the exhaustion of accessible gas fields, because of the insurmountable obstacles thrown in the way of a greater supply by the laws of other States and proceedings in the courts of other States and Federal courts, and because the dwindling natural gas supply was affected by the fact that many other cities levied tribute thereon by reason of binding contractual arrangements and local laws.

In short, the pleadings take a wide range, indicate a vast snarl of legal complications as well as one arising on allegations of controverted facts. In the mind of counsel the matter is something more than a dilemma. It arises to the dignity of a Gordian Knot. Some of the complications existing in counsels' mind might even call for the rod Moses used in smiting the rock of Horeb (Ex. 17:6), or the divining cup of the very Joseph himself (Gen. 44:5). The impossibility

of performance is denied by relator. It suggests, with a wealth of animation and detail, that such impossibility is simulated, and not real, and that under respondent's franchise the absolute duty to furnish sufficient natural gas (which, under the pleadings, is another word for sufficient pressure) exists.

Finally, supplementing all other contentions, respondent suggests that an absolute writ should not go and our provisional one should be quashed because the Public Utilities Act furnishes another and more suitable remedy, in the first instance at least—a remedy that should guide our discretion.

In the view we take of it, respondent's contention is sound in that particular and must be allowed. Because:

That act is an elaborate law bottomed on the police power. It evidences a public policy hammered out on the anvil of public discussion. It apparently recognizes certain generally accepted economic principles and conditions, to-wit, that a public utility (like gas, water, car service, etc.) is in its nature a monopoly; that competition is inadequate to protect the public, and, if it exists, is likely to become an economic waste; that State regulation takes the place of and stands for competition; that such regulation, to command respect from patron or utility-owner, must be in the name of the overlord, the State, and to be effective must possess the power of intelligent visitation and the plenary supervision of every business feature to be finally (however invisibly) reflected in rates and quality of service. It recognizes that every expenditure, every dereliction, every share of stock or bond or note issued as surely is finally reflected in rates and quality of service to the public, as does the moisture which arises in the atmosphere finally descend in rain upon the just and unjust *willy nilly.*

That there had been a vast increase in such utilities in the last decade or two and that evils have grown

up crying out lustily for a cure by the lawmaker, is writ large in current history.   The act, then, is a highly remedial one filling a manifest want, is worthy a hopeful future, and on well-settled legal principles is to be liberally construed to further its life and purpose by advancing the benefits in view and retarding the mischiefs struck at—all *pro bono publico*.   Besides all which, the lawmaker himself has prescribed it "shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities."   [Sec. 127.]

Its constitutionality is not assailed in whole or part, and, observe, the law (Sec. 137) self-guarded itself so far as it could from such attack by piecemeal by making any "section, subsection, sentence, clause, or phrase" not an inducement or consideration for or interdependent with any other—a novel and ingenious expedient, the success of which will be watched with benevolent, but by no means languid, interest.

Attend to the act still further:

It gives definitions of its terminology broad enough to be inclusive of respondent as a distributor of natural gas and the service appurtenant thereto.   [Sec. 2, subsecs. 10, 11, 25, 26.]

It creates a commission with the duty of supervision and gives it not only express power but all implied power necessary to enable it to carry out the purposes of the act.   [Sec. 3.]

It closes pitfalls incident to proceedings *inops consilii,* this by providing counsel learned in the law who holds no brief except that of justice.   [Sec. 6, 7.]

It guards against failure to reach just views and adequate results by providing examiners, engineers, accountants, inspectors and experts, whose technical knowledge and industry are at the beck and call of the commission and within its pay.   [Sec. 9.]

It makes the commission peripatetical as need calls.   It avoids unwieldiness, and the commission may

divide itself for labor so long as what one orders all direct. [Sec. 12.]

It does not contemplate saltatory action as by leaps and bounds, but proceeds on notice and hearings analogous to the law of the land. [*Vide* the whole act.]

It adds to the spur of honor and the prick of duty the *solatium* of dignified salaries thereby bespeaking (so far as the law can) painstaking and diligence. [Sec. 14.]

Its commission's jurisdiction and power extend to persons and corporations in the business of respondent. [Sec. 16, subsec. 5 and 9].

It may compel attendance at its hearings by subpoena (Sec. 22), and may provide itself *gratis* with copies of all pertinent documents in the keeping of public officers.

It denounces as a misdemeanor a failure to attend and testify on subpoena. [Sec. 23.]

It prescribes that its commission may proceed summarily and provides against lapses in formality or being enmeshed in or handicapped by "the technical rules of evidence." [Sec. 24.]

It denounces as a misdemeanor a violation by any corporation or person of its provisions, or a failure to "obey, observe and comply with" every order or "decision" of the commission in force, and ranges up to $1000 in penalty. [Sec. 65 and subsec. 2; Sec. 83.]

It, in article 4 (Secs. 67 to 85 inclusive), directs itself to gas corporations furnishing gas and seemingly covers every imaginable incident in the life and service thereof bearing on the rights of the public. For instance:

In section 68 it prescribes a safe and adequate service at a just, reasonable and uniform charge.

In section 69 the commission is given supervision of such corporation, to investigate the quality of gas and may order reasonable improvements, may fix

standards of purity, prescribe maximum and minimum pressure and to that end has power of visitation and may examine all persons and corporations on its own motion or upon complaint, may issue subpoenas *duces tecum,* and take testimony anywhere in the State.

In sections 72, 73, 75, 76, 77, the construction of gas plants, the issue of stocks, bonds and notes, the transfer of franchises, and uses to which the proceeds of sale of stocks, bonds and notes may be applied, are each and all put under the thumb of the commission.

In sections 78, 79, 80, the commission is given authority over valuation of properties, the reorganization of gas corporations, and the keeping of depreciation accounts.

In sections 81, 82, a method is prescribed for hearing complaints as to quality and price of gas, pressure, etc.

Finally, sections 83 and 84 of article 4 read as follows:

"Sec. 83. Every gas corporation, electrical corporation and water corporation, and the officers, agents and employees thereof shall obey, observe and comply with every order and decision of the commission under authority of this act so long as the same shall be and remain in force. Any such person or corporation, or any officer, agent or employee thereof, who knowingly fails or neglects to obey or comply with such order or decision, or any provision of this act, shall forfeit to the State of Missouri not to exceed the sum of one thousand dollars for each offense. Every distinct violation of any such order or decision of this act shall be a separate and distinct offense, and in case of a continuing violation each day shall be deemed a separate and distinct offense.

"Sec. 84. Whenever the commission shall be of the opinion that a gas corporation, electrical corporation or water corporation or municipality is failing or omitting or about to fail or omit to do anything

required of it by law or by order or decision of the commission or is doing or about to do anything or permitting anything or about to permit anything to be done, contrary to or in violation of law or of any order or decision of the commission, it shall direct the general counsel to the commission to commence an action or proceeding in any circuit court of the State of Missouri in the name of the commission for the purpose of having such violations or threatened violations stopped and prevented either by mandamus or injunction. The general counsel to the commission shall thereupon begin such action or proceeding by a petition to such court alleging the violation complained of and praying for appropriate relief by way of mandamus or injunction. It shall thereupon be the duty of the court to specify the time not exceeding thirty days after service of a copy of the petition within which the gas corporation, electrical corporation, water corporation or municipality complained of must answer the petition. In case of default in answer or after answer, the court shall immediately inquire into the facts and circumstances in such manner as the court shall direct without other or formal pleadings, and without respect to any technical requirement. Such other persons or corporations, as it shall seem to the court necessary or proper to join as parties in order to make its order, judgment or writs effective, may be joined as parties upon application of the general counsel to the commission. The final judgment in any such action or proceeding shall either dismiss the action or proceeding or direct that a writ of mandamus or an injunction or both issue as prayed for in the petition or in such modified or other form as the court may determine will afford appropriate relief.''

Recurring to the general provisions of the act, in article 6 (sections 106 to 115 inclusive) are found provisions for actions for penalties in courts and for hearing before the commission, naming the parties who may

make complaints, prescribing the joinder of all matters of complaint into one, abrogating rules as to misjoinder and nonjoinder, providing for notice, etc., and directing that on appeal to any court from an order or "decision" of the commission the same lack of form shall obtain (Sec. 107); that the utility itself may make complaint (Sec. 108); that the parties and those allowed to intervene may put in proof and have process for witnesses and in that connection is the following provision: "The commission or any commissioner or any party may, in any investigation or hearing before the commission, cause the deposition of witnesses residing within or without this State to be taken in the manner prescribed by law for like depositions in civil actions in the circuit courts of the State and to that end may compel the attendance of witnesses and the production of books," etc., etc. (Sec. 109); that rehearings may be had before the commission itself (Sec. 110); that a circuit court review may be had on a writ of *certiorari* "or review" taking up the record and *evidence,* and thereon the order or decision of the commission shall be affirmed or reversed by the judgment of such court (Sec. 111); that all actions and proceedings under the act shall have precedence in such court (Sec. 113); and that an appeal lies from the judgment of the circuit court to the Supreme Court, which appeal shall have precedence of "all civil causes of a different nature pending in said court" (Sec. 114).

Recurring to other general provisions of the act, it prescribes that the commission may on notice require the production within this State of books and papers or, at its option, certified copies (Sec. 121); and the act again denounces in the most comprehensive terms all violations of it and all failures to obey the commission's orders, "decrees," rules, directions, demands or requirements (Secs. 129, 130, 131).

(5) The complaint made and the remedy invoked in this proceeding, taken in connection with the Public

Utilities Act we have outlined, raises the question heretofore stated, viz., Whether we should assume jurisdiction and issue an absolute writ on this original proceeding *in the first instance?* As to that we say:

We are of opinion that to do so would be to approach that new and important statute with a frosty and questioning judicial countenance.

Would be to run counter to the wise public policy evidenced by that statute. Would be either to take respondent corporation from under the burden and benefits of that statute, or to hazard handicapping the powers and discretions of the Utilities Commission hereafter in the premises should it assume to act.

. Would be to say that such statute did not provide an efficient and adequate remedy for the grievances complained of, if found to exist.

Would be to assume that this court is better equipped with ways and means to make the investigation necessary to any just solution of the problem presented than is the Utilities Commission.

Would be to substitute our absolute writ of mandamus, inflexible, unreasoning, and ill suited to compelling a general course of conduct and a "long series of continuous acts," for the flexible, speedy and sensible remedies prescribed by the Public Utilities Act, to be applied from time to time as circumstances alter and fair dealing demands.

We are not willing to take any such position. The commission is better equipped with experts, technical knowledge, and other efficient aids to a neutral and full investigation than would be any commissioner appointed by the court. Its visitorial and administrative powers are so vast and so flexible as to mold its procedure and orders to the pressure of the real facts found to exist. Heavy penalties follow disobedience to its orders as a spur to obedience. It has full machinery to compel discovery and the law coerces compliance. The matter touching the business of going

concerns, the hearings are not hampered or clogged by technicalities, but businesslike simplicity, speed and efficiency are provided for as were seemly and meet. Persons and corporations unjustly affected by the orders and proceedings have a quick remedy by rehearing, by review in court and by appeal here. He who reads that act and does not see a complete rounded scheme for dealing with the business of public utilities at every spot where the shoe pinches the public or the utility, reads it to little purpose. He who reads it and does not see that the yearning of the lawmaker was to have the courts trust the commission in the first instance to solve such business problems, as those presented in this case, reads it to still less purpose. We cheerfully bow to the evident intent of the lawmaker, shining on every page of his act as expressive of the will of the people in constitutional form. As said by a wise judge in a passage quoted by learned counsel for relator, "To the law everyone owes homage, 'the very least as needing its care, the greatest as not exempt from its power.' " So, in judicially dealing with a law, the intendment of the lawgiver, gathered from the four corners of his law and all his words, is to be allowed as the soul of his law, the thing to be heeded as making his law a live human instrument.

Having a discretion in the premises to go on with an investigation here, to be followed or not by an absolute writ, we exercise it by refusing to do so and by relegating the matter to the utilities commission if those interested be advised to take that course.

Our conclusion is sustained by the reasoning and judgment of those courts dealing with a like Public Utilities Act under like conditions. [Nebraska Tel. Co. v. State, 55 Neb. 627; State ex rel. v. A. C. L. R. R. Co., 53 Fla. 650; People ex rel. v. Interurban St. Ry. Co., 177 N. Y. 296; State ex rel. v. Duluth St. Ry. Co., 153 Wis. 650. *Vide arguendo,* Wickwire Steel Co. v. N. Y. Cen., etc., R. R. Co., 104 C. C. A. 504; A., T. &

S. F. Ry. Co. v. Lumber Co., 31 Okla. 661; State ex rel. v. Court, 67 Wash. 37.]

By excluding from this opinion certain questions briefed by counsel, we have proceeded on the theory that to rule them at this time would have a tendency to put the utilities commission in leading strings if its powers are ever set in motion on the subject-matter in dispute. It should be left with a free rein until such time, if ever, as its commands and the evidence on which it acts come into court to be judicially dealt with in accordance with the Public Utilities Act.

Let respondent's motion to quash be sustained. Let our alternative writ be quashed and the proceeding dismissed. It is so ordered. *Graves, Brown, Walker* and *Faris, JJ.,* concur; *Woodson, J.,* not sitting; *Bond, J.,* dissents.