THE STATE ex rel. PUBLIC SERVICE COMMIS-SION v. CORNELIUS ROACH, Secretary of State.

**In Banc, April 2, 1914.**

1. **DISTRIBUTION OF STATUTES: Head of Department: Public Service Commissioners.** The statute requiring the Secretary of State to deliver "to the head of each State department, bureau or institution . . . each one copy" of the Revised Statutes and Session Laws should be construed according to its meaning and spirit rather than its exact letter; and, when so construed, it means that each of the five commissioners of the Public Service Commission is a "head of a department,

bureau or institution" and entitled to receive from the Sec-
retary of State a copy of the Revised Statutes and Session
Laws, since by the act creating the commission, each com-
missioner may act separately in any part of the State in car-
rying out the vast powers conferred upon the commission.
Besides, the statute in effect requires the Secretary of State
to furnish both the Revised Statutes and the Session Laws to
all state, county and township officers who have any legal duties
to perform, and that would seem to imply that the com-
missioners, whose duties are many fold more important than
those of some of those officers, should each be furnished with
said books.

2.  **STATIONERY: For Public Service Commission.** The Laws of
1913 did not require the Secretary of State to pay for the sta-
tionery for the Public Service Commission out of the twelve
thousand dollars appropriated "for stationery for the office of
Governor, Secretary of State, State Auditor, State Treasurer,
Department of Education, Railroad and Warehouse Commis-
sioners," etc. The Public Service Commission, by statute, suc-
ceeded to the powers and duties possessed and exercised by
the Railroad Commission, but that fact did not make available
for the former the appropriation for stationery made for the
latter. That is apparent for two reasons: first, because the
same act appropriated $150,000 to pay the contingent expenses
of the Public Service Commission, including stationery; and,
second, appropriation acts are not permanent laws, existing
until subsequently repealed, as is the act devolving the powers
of the Railroad Commissioners upon the Public Service Com-
mission, but expire by their own limitation at the end of two
years, and the act abolishing the Railroad Commission made
no provision for paying for stationery for it.

## Mandamus.

WRIT DENIED  (*in part*).

*E. J. Bean* for relator.

(1)   The demurrer of respondent should be over-
ruled and the writ of mandamus should issue as asked
by relator in its petition. Merrill on Mandamus, par.
108, p. 130. (2) The reason of the law prevails over
its letter. General terms are so construed as not to
lead to injustice or absurd consequences. The purpose
and intent of sections 8096 and 8069 was to require the

Secretary of State to deliver copies of the Revised
Statutes and Session Laws to all officers of the State
whose duties required a construction or enforcement
of such statutes, or any part of the same.  Therefore,.
the words "head of each State department, bureau or
institution" should be so construed as to include each
commissioner of the Public Service Commission.  Secs.
8096, 8069, R. S. 1909; Kenney v. McVoy, 206 Mo. 67;.
Verdin v. St. Louis, 131 Mo. 163; United States v.
Kirby, 7 Wall. 472; State ex rel. v. King, 44 Mo. 283;
Public Service Commission Act, Laws 1913, p. 557,
secs. 3, 4, 11, 12, 16, 46, 81, 102, 108 and 109; 2 Lewis'
Sutherland Statutory Construction (2 Ed.), par. 590,.
p. 1085.  (3) It was the duty of the respondent to fur-
nish relator stationery, as asked in the petition of re-
lator herein.   Secs. 10361, 10363, R. S. 1909; Laws
1913, p. 17, sec. 27; Public Service Commission Law,
Laws 1913, p. 650, secs. 132, 133, 136; Laws 1913, p.
9, sec. 12d; Laws 1913, p. 42, sec. 7; Laws 1913, p. 25,
sec. 62.  (4) "In order to ascertain the true intent of
the Legislature we must construe all sections of the
statute upon the  subject in controversy together."
State ex rel. v. Ferry Co., 208 Mo. 639; 36 Cyc. 1151,.
par. 3.

*John T. Barker,* Attorney-General, and *S. P.
Howell* for respondent.

(1)  Each member of the Public Service Commis-
sion is not, within the meaning of this act, the head
of a department, bureau or institution.  Bouvier's Law
Dictionary, p. 270; U. S. v. Germaine, 99 U. S. 508;.
U. S. v. Van Leuven, 62 Fed. 62; People v. Fire
Commrs., 86 N. Y. 149; Black's Law Dictionary, p.
354; R. S. 1909, sec. 8096; U. S. v. Mouatt, 124 U. S.
303.  (2)  Sec. 11, p. 563, Laws 1913, provides that all
books and stationery needed for the commission shall
be paid for in the same manner as other expenses; sec-
tion 15 provides that all salaries and expenses of the

commission shall be paid out of the funds provided therefor; Sec. 41, p. 18, Laws 1913, appropriates one hundred and fifty thousand dollars to pay the contingent expenses, including printing and office supplies of the Public Service Commission; it is therefore clear that this commission must pay for the statutes and its printing, books and stationery out of its own funds, as provided by the Legislature. Sec. 11, p. 563, Laws 1913; Ib., Sec. 15; Sec. 41, p. 18, Laws 1913. (3) Where the language of a statute is unambiguous and its meaning evident, courts have no right by construction to substitute their ideas of legislative intent for that unmistakably held by the Legislature and unmistakably expressed in legislative words. The meaning of the words, "head of each State department, bureau or institution," is plain and unambiguous. Sec. 8096, R. S. 1909; Clark v. Railroad, 219 Mo. 534; State ex rel. v. Riley, 203 Mo. 175; Smith v. Railroad, 143 Mo. 37; Henry v. Evans, 97 Mo. 55; State ex rel. v. Gammon, 73 Mo. 426; State ex rel. v. Wilder, 206 Mo. 541; State v. Duggan, 15 R. I. 403; McKay v. Fairhaven, 75 Conn. 608; Lewis' Sutherland Stat. Const. (2 Ed.), par. 367, p. 702; Ib., par. 366, p. 698; Lemonius v. Mayer, 71 Miss. 514.

WOODSON, J.—This is an original proceeding instituted in this court by the relator against the respondent asking for a writ of mandamus requiring the latter to furnish to the former five copies of the Revised Statutes of Missouri of 1909, and five copies each of the Session Laws of the State for the years 1911 and 1913, as well as certain stationery mentioned, for the use of the relator and the five members thereof in its and their official capacity.

Upon filing the petition for the writ, respondent waived the issuance of the alternative writ, entered his appearance and stipulated with respondent to the ef-

fect that the petition might be considered and treated as the alternative writ.

Prior to the return day the respondent filed a demurrer to the petition.

From this brief statement of the case it will be seen that this is a friendly suit growing out of an honest difference in opinion among public officers as to what are the rights and duties of the respective parties in the premises.

The case having assumed this aspect, it becomes necessary to set out the petition and demurrer thereto, in order to intelligently present the legal propositions involved. With formal parts omitted, they are as follows:

"Your petitioner herein respectfully represents:

"That the Public Service Commission of the State of Missouri was created by the Public Service Commission Act, which was duly enacted by the Legislature of the State of Missouri, and which came into full force and effect as the law of said State on the 15th day of April, 1913. That the Public Service Commission, as created by said law, consists of five commissioners, and that in accordance with the terms and provisions of said law the Governor of the State of Missouri has heretofore appointed as commissioners John M. Atkinson, commissioner and chairman of said Commission, and the following commissioners: John Kennish, H. B. Shaw, Wm. F. Woerner and Frank A. Wightman. That on the —— day of July, 1913, and at all times hereinafter mentioned, each of said commissioners had taken the oath of office as prescribed by law and had duly qualified, entered into the discharge of his duties as prescribed by law and has continued so to do, and is now engaged in the discharge of the duties of commissioner of the Public Service Commission. That the said commissioners constitute the Public Service Commission of the State of Mis-

souri and are public officers of the said State. That
it is the duty of said Public Service Commission and
of each of the commissioners thereof to administer,
construe and enforce the laws of this State governing
the rates, service, the issue of bonds and stock, etc.,
by common carriers, gas, electrical and telephone com-
panies, etc., which are engaged in serving the public
in said State, and that it is the duty of the said Com-
mission, and of each commissioner, to investigate, con-
strue and enforce the laws of the State in the fore-
going particulars.

"That on and prior to the said —— day of July,
1913, and at all times hereinafter mentioned, Corne-
lius Roach was the duly elected, qualified and acting
Secretary of State within and for the State of Mis-
souri. That as such and by virtue of the law of said
State, he was the custodian of the printed copies of the
public statutes of the State of Missouri, including the
Revised Statutes of said State for the year 1909, con-
tained in three volumes, numbered one, two and three,
and the acts of the Legislature of the State of Mis-
souri for the year 1911. That said Cornelius Roach,
at the time aforesaid, and now has in his possession
as such custodian a large number of the printed copies
of the said Revised Statutes of the State of Missouri
for the year 1909, and the acts of the Legislature of
the State of Missouri for the year 1911, which were
printed and furnished to him by said State. That
under the laws of said State it is and was the duty
of said Roach to furnish and deliver to the Public
Service Commission five copies of volumes one, two,
and three of said Revised Statutes of the State of Mis-
souri for the year 1909, and five copies of the acts of
the Legislature of the State of Missouri for the year
1911, and five copies of the acts of the Legislature of
said State for the year 1913, for the use of each of
said commissioners in the discharge of their duties as
commissioners aforesaid. That on the —— day of

June, 1913, said Cornelius Roach, as Secretary of State, did furnish and deliver to the said Public Service Commission for the use of said Commission, five copies of the acts of the Legislature of said State for the year 1913. and one copy of volumes one, two and three of the Revised Statutes of the State of Missouri for the year 1909, and one copy of the acts of the Legislature of the State of Missouri for the year 1911, for the use of said commissioners. That on the —— day of July, 1913, the Public Service Commission did demand and request, in writing—which demand is herewith filed, marked Exhibit "A"—that said Roach furnish and deliver to said Commission four copies of volumes one, two and three of the Revised Statutes of the State of Missouri for the year 1909, and four copies of the acts of the Legislature of the State of Missouri for the year 1911, for the necessary use of the said commissioners and of the Public Service Commission in the discharge of their duties. That said demand in writing was delivered to the said Cornelius Roach as Secretary of State on said —— day of July, 1913. That the said Cornelius Roach did then and there wrongfully refuse, and still wrongfully refuses, to deliver to the Public Service Commission four copies of the Revised Statutes for the year 1909, and four copies of the acts of the Legislature of the State of Missouri for the year 1911, as so requested, or any part or portion thereof, notwithstanding that he had theretofore been advised that he could lawfully so do by the Attorney-General of the State of Missouri.

"That on said —— day of July, 1913, the said Cornelius Roach, as Secretary of State, was the custodian and had under his control and possession stationery for the use of the said Public Service Commission for which payment had been provided for in section 27 of an act passed by the Legislature of said State and approved by the Governor thereof on the 23rd day of April, 1913, which act appropriated from the treasury

of said State, chargeable to the revenue fund thereof for the years 1913 and 1914, the sum of twelve thousand dollars for stationery for the offices of the Railroad and Warehouse Commissioners and other public officers of said State. That many years prior to April 15, 1913, the State of Missouri had authorized and established a Board of Railroad and Warehouse Commissioners, which consisted of three members. That said board was vested by law with authority to investigate and enforce the laws of the State governing rates, service, equipment, etc., of railroads and express companies. That by the Public Service Commission Act aforesaid the Board of Railroad and Warehouse Commissioners and the offices of the commissioners thereof were abolished, and that the powers and duties of the Board of Railroad and Warehouse Commissioners were imposed by said act upon the Public Service Commission, together with other duties. That it was provided and enacted by said Public Service Commission Act that the Board of Railroad and Warehouse Commissioners should transfer to the Public Service Commission all maps, books and records of their said office. And that it was further provided that wherever the terms 'Board of Railroad and Warehouse Commissioners' occur in any law that such terms or references should be deemed to refer to and include the Public Service Commission of the State of Missouri. That the Public Service Commission is therefore entitled to the stationery, as provided for in section 27 aforesaid, for the Railroad and Warehouse Commissioners. That the said Cornelius Roach, as Secretary of State, at the time aforesaid, did have in his custody and possession large amounts of stationery, including the articles hereinafter set forth, for which payment was provided from said fund so appropriated for stationery for the Public Service Commission as successor to the Board of Railroad and Warehouse Commissioners. That on the —— day of July, 1913, it was necessary

for the use of the Public Service Commission and the commissioners thereof, and its officers and employees, in the discharge of their duties to have and use the stationery hereinafter named. That on said —— day of July, 1913, said Public Service Commission did demand, in writing, from said Cornelius Roach as Secretary of State that he furnish and deliver to the said Public Service Commission the following named articles of stationery for its use:

"[Then follows a long list of the stationery demanded.]

"And which articles are as described in the written demand aforesaid—which is hereto attached, marked exhibit "B" and which articles are as aforesaid. That the said Cornelius Roach did then and there wrongfully refuse and still unlawfully refuses to deliver said articles, or any part thereof, to the Public Service Commission, notwithstanding he had been advised that he could lawfully so do by the Attorney-General of the State of Missouri.

"Petitioner further states that it is remediless in the premises by or through the ordinary processes or proceedings at law, and therefore prays this honorable court to award against Cornelius Roach, as Secretary of State of the State of Missouri, a writ of mandamus, demanding and requiring him to furnish and deliver to the petitioner herein four copies of volumes one, two and three of the Revised Statutes of the State of Missouri for the year 1909; four copies of the acts of the Legislature of the State of Missouri for the year 1911; 6 boxes "NePlus Ultra" typewriter paper No. 8, plain; 6 bunches requisition bond; 3 bunches amber traffic; 6 boxes purple carbon paper; 6 boxes black carbon paper; 6 black and red record Underwood typewriter ribbons; 6 purple and red copying Underwood typewriter ribbons; 3 dozen Faber No. 2 pencils; 3 dozen Dixon's special pencils; 3 dozen red pencils; 3 boxes Falcon pens; 6 jars paste; 1 dozen rolls pins;

3 boxes O. K. fasteners; 6 boxes paper clips, and for such other process and orders as to the court may seem meet and just.''

The demurrer was as follows:

''Comes now the defendant, Cornelius Roach, Secretary of State of the State of Missouri, and demurs to the petition and alternative writ in this case, which by agreement is the petition, and as grounds for this demurrer, the defendant says:

''1.  That said petition and alternative writ does not state facts sufficient to constitute a cause of action against this defendant and in favor of plaintiff relators.

''2.  That said petition and alternative writ and all the matters and things therein stated and set forth are not sufficient in law or equity to entitle the plaintiff to the relief asked for in the petition or any part of said relief, or to authorize the issuance of the writ of mandamus as prayed for.

''3.  The law provides ample means for the relator to obtain the books and supplies which relators now seek to secure in this proceeding from defendant.

''Wherefore, the defendant prays the judgment of this court upon this demurrer, discharging defendant from further proceeding in this cause.''

I.  There are two separate and distinct legal propositions presented by this record for determination: first, does the law require the Secretary of State to furnish a copy of the Revised Statutes of Missouri for the year 1909, and of the Session Laws for the years 1911 and 1912, to each of the five members of the Public Service Commission? and, second, does it require that the Secretary furnish to the Commission the stationery demanded?

Head of Department or Bureau: Each Public Utilities Commissioner.

We will consider these propositions in the order stated.

Attending the first: This question turns upon the true meaning of sections 8096 and 8069, Revised Statutes 1909.

Those sections, as far as they are material to this question, read as follows:

The former reads:

"There shall be printed twenty thousand copies of each volume of the Revised Statutes, which shall be received by the Secretary of State, and by him held and disposed of as follows: To the head of each state department, bureau or institution, judges of the Supreme Court and courts of appeals, the judges of the circuit and state criminal courts, the members of the General Assembly, the libraries of the State University and normal schools, to each public library, on application of the librarian, he shall deliver each one a copy. . . ."

And the latter reads:

"The Secretary of State shall distribute the printed copies of the laws and resolutions passed at each session of the General Assembly immediately after receiving the same in the manner following, namely: To the head of each state department, bureau and institution, including each judge of the Supreme Court, one copy; to the law library of the Supreme Court of this State, six copies. . . ."

The former regards the Revised Statutes and the latter the Session Laws; and as there is no difference in the meaning of the two, we will deal with the first only, and what is there said will apply equally to the second.

The contention of counsel for relator is, that the words of the statute, the "Heads of each State department, bureau or institution," mean and should be construed so as to include each commissioner of the Public Service Commission.

This contention is predicated upon the well known rule of statutory construction that the spirit and mean-

ing of the statute should prevail over the letter thereof.

In order to apply this rule we must turn to the act creating the Commission and ascertain therefrom the nature and character of the Commission and the respective members thereof, as well as their rights and duties, as prescribed by that act. That act begins at page 557 of the Laws of 1913 and ends on page 651.

Without going into details this act creates the Commission and confers upon it certain powers and authorities too numerous to mention, among others largely those that were formerly possessed by the Board of Railroad and Warehouse Commissioners. In addition the act confers many of the same powers upon each of the five members of the Commission acting separately in the various portions of the State, with a requirement that they report the same to the Commission for final action. [State ex inf. Atty.-Gen. v. Kansas City Gas Company, 254 Mo. 515.]

Under these general provisions of the act, counsel for respondent concede that the Commission is entitled to one copy of the statutes and said acts of the Legislature, but deny that each member thereof is entitled to them.

We are not able to lend our concurrence to this position of the relator, for the reason that if the Commission itself is a head of a department, bureau or institution, then by parity of reasoning it seems to me that each member thereof, under a liberal construction of the statute in the light of the vast powers they possess, and duties required to be performed by them, should likewise be held to be the head of a department, bureau or institution.

Each and all of them may hold separate sessions in various parts of the State, at the same time. [State ex inf. Atty.-Gen. v. Kansas City Gas Co., supra.]

This interpretation of the statute is in harmony with and strengthened by the general provision of the

same section of the statute, and kindred statutes, which in effect require the Secretary of State to furnish the Revised Statutes and Session Laws to all state, county and even the township officers who have any legal duties to perform.

That being true, why should they be favored with the laws that are to govern their official conduct and at the same time withhold them from these commissioners whose duties are perhaps a thousandfold more complicated and equally if not of greater importance for the public welfare? The asking of the question answers it. There is no reason for such a discrimination.

I am, therefore, clearly of the opinion that it was the duty of the Secretary of State to furnish to the commission the five sets of the Revised Statutes requested by the relator, as well as five copies of the session acts for the years 1911 and 1913, and to that extent the peremptory writ of mandamus should be issued; and it is so ordered.

II. The second proposition previously mentioned for determination, namely, was it the duty of the Secretary of State, to furnish the Commission with stationery, etc., is without merit.

Stationery: For Public Utilities Commission.

This question is governed by sections 11 and 15, page 563, Laws 1913.

The first section provides that all books and stationery needed for the use of the Commission shall be paid for in the same manner as other expenses thereof are paid for and section 15 of the act provides that all salaries and expenses of the Commission shall be paid for out of the funds provided for by that act; and section 41, page 18 of the Laws of 1913, appropriates $150,000, to pay the contingent expenses of the Commission, including printing and office supplies.

From reading these statutes it is perfectly clear to our minds that it is the duty of the Commission to pay for its printing, books, records and stationery out of its own funds, appropriated by the Legislature for that purpose, and not that of the Secretary of State to pay for the same out of the meagre $12,000, appropriated for *all the* other departments of State.

This conclusion is not changed by the fact that the act creating the Public Service Commission provides that wherever the words "Railroad and Warehouse Commissioners," etc., appear in the laws of the State, the words "Public Service Commission" shall be substituted therefor, for the reason that the clear intention of the Legislature was to confer upon the latter the powers and duties possessed and exercised by the former, and which was thereby abolished, and not to make an appropriation to pay for the stationery to be used by the Public Service Commission. The latter is true for two reasons: First, because the sections previously mentioned expressly make appropriations for all the expenses of the Public Service Commission, including stationery; and, second, because the acts of the Legislature appropriating funds to defray the expenses of the State government are not permanent laws, existing until subsequently repealed, but expire by limitations, as it were, every two years, when the Legislature makes new appropriations.

Consequently, there being nothing contained in the Laws of 1913 providing for the payment of stationery for the Railroad and Warehouse Commissioners, the words "Public Service Commission" cannot for that reason be substituted therefor. In other words, the former commission having been abolished, there was no occasion for the Legislature to make appropriation for the payment of its stationery; therefore, the latter could not succeed to or be substituted to the rights of the former in that regard.

We are, therefore, of the opinion that the writ in so far as the stationery is concerned should be denied; and it is so ordered.

All concur, except *Faris, J.,* who concurs in all that is stated, but is *dubitante* as to the result.