The Honorable Roy D. Blunt Secretary of State State Capitol Building, Room 210 Jefferson City, Missouri 65101
Dear Secretary Blunt:
This opinion letter is in response to your questions concerning Senate Committee Substitute for House Committee Substitute for House Bills Nos. 1650 and 1565, 85th General Assembly, Second Regular Session (1990) (hereinafter "House Bills Nos. 1650 and 1565"). The questions you posed are attached hereto as Attachment A. We have summarized your questions as follows:
WHO IS COVERED BY THE LAW?
 1. Who is covered by the definition of "lobbyist" set out in Section 105.470.1(3)? For example:
 A. If the Commissioner of Securities brings a security fraud investigation to the attention of the Attorney General and seeks a criminal prosecution, is the Commissioner of Securities a "lobbyist"?
 B. If an executive director for a professional licensing board asks the Secretary of State to refuse to grant certain types of names for professional corporations, is that lobbying?
 C. Is an administrator of a state agency attempting to have the Secretary of State compile a list of all new corporations on a periodic basis for use by that agency engaged in influencing the taking of any action?
 D. Is the request by someone in the Governor's Office of an executive agency to delay the implementation of a proposed regulation a lobbying activity?
 2. What is an administrative agency as referred to in Section 105.483(3) [Section 1(3) of House Bills Nos. 1650 and 1565]? For example:
 A. Is the Administrative Hearing Commission an administrative agency? If so, which Commissioner is considered the head of the agency?
 B. Is the Commissioner of Securities, whose position is defined by statute, the head of an administrative agency?
 C. Is the Public Service Commission an administrative agency? If so, are all the commissioners considered the head of an agency?
 D. Is the Commission on Human Rights an administrative agency? If so, is each commissioner a head of an administrative agency?
 3. Who makes a "binding decision" as referred to in Section 105.483(5) [Section 1(5) of House Bills Nos. 1650 and 1565]? For example:
 A. Is a decision by a corporations clerk in the Secretary of State's Office to file or not file a new corporation or to grant the use of a corporate name a "binding decision"?
 B. If an employee of a branch office of the Department of Revenue refuses to issue a car title because there is no mileage statement provided or refuses to issue license plates because the owner cannot show insurance coverage, is it a "binding decision"?
 C. Does the decision to pursue litigation or settle a case made by an assistant attorney general or other agency attorney (e.g., Department of Revenue or Department of Social Services), involve making a "binding decision"?
 D. Does the decision by an executive director of a professional registration board to investigate a licensed professional constitute a "binding decision"?
 4. What is a "binding decision" as referred to in Section 105.483(7) [Section 1(7) of House Bills Nos. 1650 and 1565]? For example:
 A. Is an employee for the Recorder of Deeds who refuses to record a general warranty deed because of its failure to be acknowledged correctly by a notary public making a "binding decision"?
 B. Does the language in Section 105.483(7) "making binding decisions for the political subdivision including decisions . . . relating to the issuing of licenses and permits" act to limit or expand the meaning of making "binding decisions"?
 5. What does "enter into any contract" mean in the context of Section 105.483(6) [Section 1(6) of House Bills Nos. 1650 and 1565]? For example, when a state agency secretary orders extra clerical supplies for a small amount of money, such as twenty dollars or less, is that entering into a contract to purchase? Must that secretary file a financial interest statement?
 6. What does "participates in . . . the adoption of any such rule or regulation" mean in Section 105.483(6)? For example, if the Commissioner of Securities circulates a draft securities registration rule to his investigators for their comments:
 A. Do such comments, if they result in changes or additions to the rule, result in participating in the adoption of any such rule?
 B. If an investigator helps draft the rule, is this participating in the adoption of the rule?
 C. Is an investigator who comments on the rule or submits a memorandum commenting on the rule participating in the adoption of the rule even if his comments do not result in changes or additions to the rule?
 7. In the Section 105.483(8) [Section 1(8) of House Bills Nos. 1650 and 1565] reference to officers and employees of a political subdivision having authority to enter into contracts:
 A. Is an employee of a county clerk's office entering into a contract if he purchases a small amount of clerical supplies?
 B. If a cook in each school in a school district is authorized to purchase food, is that entering into a contract?
 8. In the Section 105.483(8) reference to officers and employees of a political subdivision participating in the adoption of rules and regulations, if the manager of a city-owned swimming pool creates posted rules for the conduct of swimmers, must that manager file a financial interest statement?
 9. "Special districts" are not mentioned except in the second sentence of Section 105.483(7). They are not mentioned in the first sentence of Section 105.483(7) and are not mentioned at all in Section 105.483(8). Does this mean that "special districts" are not to be considered as "political subdivisions" other than as stated in this limited context or should "special districts" be considered as "political subdivisions" wherever that term is mentioned?
 10. Do candidates for a judgeship file a financial interest statement? If so, with whom do they file, the Secretary of State or the Commission on Retirement, Removal and Discipline? Are candidates for judgeships state elected officials or local elected officials?
 11. What is the meaning of "annual general operating receipts" in Section 105.483(7)? Does the term "annual budget" in Section 105.483(2) [Section 1(2) of House Bills Nos. 1650 and 1565] differ from the term "annual general operating receipts" in Section 105.483(7)?
 12. In determining "annual general operating receipts" and "annual budget," is income that is produced by the ownership of a political subdivision's electric plant, water treatment plant or hospital, for example, included? If not, what are the distinctions between which types of revenue-generating services should be included and which types should not be?
 13. Are non-compensated members of state boards and commissions (as well as local boards and commissions) considered officers or employees under Section 105.483(5), (6), (7) and (8)? What is a definition of officer?
WHAT TIME PERIOD IS COVERED BY THE FINANCIAL INTEREST STATEMENT AND WHEN MUST DISCLOSURE BE MADE?
 14. Section 105.487 [Section 3 of House Bills Nos. 1650 and 1565] provides when a financial interest statement shall be filed. The majority are filed between April 15 and May 1 each year. However, the year covered by the statement is not defined as when it begins and ends. Is it a calendar year or is it the year between April 15 and April 14?
 15. Section 105.485.2 [Section 2.2 of House Bills Nos. 1650 and 1565] states: "Each person required to file a financial interest statement shall file the following information for himself, his spouse and dependent children in his custody for the twelve months preceding the date of filing the statement. . . " Does the underlined phrase modify "custody" or "financial interest statement"?
 16. When is the first report due? Since the law does not go into effect until January 1, 1991, can it request information for a time period before that time, that is, for the calendar year 1990?
 17. If someone who would normally be required to report resigns his position before April 15, 1991, does he still have to file a report? If so, would he have to report if he resigned his position before January 1, 1991?
WHAT MUST BE DISCLOSED?
 18. What is the definition of "income" as referred to in Section 105.485.2(1) [Section 2.2(1) of House Bills Nos. 1650 and 1565]? Is there a difference between "income" and "earned income" as referred to in Section 105.485.2(3) [Section 2.2(3) of House Bills Nos. 1650 and 1565]?
 19. How is the ten thousand dollar value referred to in Section 105.485.2(4) and (5) [Section 2.2(4) and (5) of House Bills Nos. 1650 and 1565] determined?
 A. For a piece of real property, is it the purchase price, appraised fair market value, assessor's valuation or possible selling price? If the appraisal value is used, must the property be appraised for each reporting period?
 B. As to the value of stock and other equity interests, when is it valued? At the beginning of the year, the end, or at its highest value during the year? And if the equity interest is held in a mutual fund, how is it valued? Or if the equity interest is a pension fund, how is that valued?
 C. For example, a Missouri state employee may have deferred nine thousand dollars of his compensation into PEBSCO with five thousand dollars into a mutual fund and four thousand into another equity. Each earns interest and together they value over ten thousand dollars, but not separately. Are they reported?
 20. Section 105.485.2(3) requires disclosure of the name and address of any other source of earned income of one thousand dollars or more. Does this require persons such as doctors, lawyers, accountants and other business and professional people who are members of boards or commissions to report the names and addresses of their clients who may pay an individual fee of over one thousand dollars directly to the reporting person?
MISCELLANEOUS QUESTIONS.
 21. Where does a reporting person file if they live outside the state if they are an officer or employee of a political subdivision that is situated in more than one county? Section 105.489(4) [Section 4(4) of House Bills Nos. 1650 and 1565] requires a reporting person to file with the "election authority having jurisdiction for the residence of the person filing." A multi-county school district located next to the state's border may have an employee who lives in another state. Where does that person file?
 22. Section 105.491.2(1) [Section 5.2(1) of House Bills Nos. 1650 and 1565] allows a filing officer, other than the Secretary of State to, "charge a reasonable filing fee to cover the actual pro-rata cost of providing such services as approved by the secretary of state." Does this provision require the Secretary of State to approve local filing fees and does this filing fee require a popular vote in accordance with the Hancock Amendment?
WHO IS COVERED BY THE LAW?
Your first series of questions relate to the parties subject to the requirements of these provisions.
 Question 1: Who is covered by the definition of "lobbyist" set out in Section 105.470.1(3)?
The definition of "lobbyist" is as follows:
 105.470. 1. As used in this section, unless the context requires otherwise, the following words and terms mean:
* * *
 (3) "Lobbyist", any person, including persons employed by or representing federal or state agencies and all political subdivisions thereof, who acts in the course of his employment or who engages himself for pay or for any valuable consideration for the purpose of attempting to influence the taking, passage, amendment, delay or defeat of any legislative action or any action by the executive branch or any agency or commission of state government; or any person who receives any direct or indirect benefits or expenses for lobbying activities, whether by grant or otherwise, from any state, the federal government or any private not for profit foundation or corporation; provided that the term shall not include any member of the general assembly or elected state officer;
* * *
Your specific examples relate to the amendment enacted by House Bills Nos. 1650 and 1565 to include within the definition of "lobbyist" persons who act in the course of their employment or engage themselves for pay or any valuable consideration "for the purpose of attempting to influence . . . any action by the executive branch or any agency or commission of state government." In construing this amendment, legislative intent should be ascertained from the language used, considering words in their plain and ordinary meaning. Metro Auto Auction v.Director of Revenue, 707 S.W.2d 397, 401 (Mo. banc 1986).
Your first example concerns the Commissioner of Securities informing the Attorney General of a securities fraud investigation and seeking a criminal prosecution. Section409.410, RSMo 1986, authorizes the Commissioner of Securities to refer evidence concerning violations of certain provisions in Chapter 409 to the Attorney General who may institute criminal proceedings. Therefore, when the Commissioner of Securities seeks a criminal prosecution, he is acting "in the course of his employment." Further, the Commissioner is attempting to influence the Attorney General, a member of the executive branch, to take an action, namely, institute criminal proceedings. Therefore, in such instances, the Commissioner is a "lobbyist" as defined in Section 105.470.1(3).
Your second example concerns an executive director for a professional licensing board asking the Secretary of State to refuse to grant certain types of names for professional corporations. Section 356.041.2, RSMo 1986, requires the licensing authority of the professional involved in an incorporating professional corporation to file a certificate with the Secretary of State stating, among other requirements, "that the proposed corporate name has been approved by each such licensing authority if required by the rules or regulations of the licensing authority." Therefore, when the executive director takes such action, he is acting "in the course of his employment." Further, the executive director is attempting to influence the Secretary of State, a member of the executive branch, to take an action, refuse to grant certain types of names for professional corporations. Therefore, in such instances, the executive director is a "lobbyist" as defined in Section 105.470.1(3).
Your next example involves an administrator of a state agency asking the Secretary of State to compile a list of all new corporations on a periodic basis for use by the agency. Assuming such information is necessary for the agency in performing its normal duties, the request is made in the course of the administrator's employment. Further, the request is an attempt to influence the Secretary of State, a member of the executive branch, to take an action, compile a list of all new corporations on a periodic basis. Therefore, in this example, the administrator is a "lobbyist" as defined by Section105.470.1(3).
Your next example involves a request by someone in the Governor's office directed to an executive agency to delay implementation of a proposed regulation. We assume the person in the Governor's office is acting in the course of his employment. The request is an attempt to influence an executive agency to take an action, delay implementation of a proposed regulation. Therefore, in this example, the person in the Governor's office is a "lobbyist" as defined by Section105.470.1(3).
 Question 2: What is an administrative agency as referred to in Section 105.483(3)?
Section 105.483(3) provides:
 105.483. Each of the following persons shall be required to file a financial interest statement:
* * *
 (3) The head of each department, division and administrative agency of state government, and . . . .
* * *
"When the legislature enacts a statute referring to terms which have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action." Citizens ElectricCorporation v. Director of Department of Revenue, 766 S.W.2d 450,452 (Mo. banc 1989). Looking to the Administrative Procedure Act, Section 536.010(1), RSMo 1986, defines "agency" as:
 536.010. Definitions. — For the purpose of this chapter:
 (1) "Agency" means any administrative officer or body existing under the constitution or by law and authorized by law or the constitution to make rules or to adjudicate contested cases;
* * *
"Contested case" is defined in Section 536.010(2), RSMo 1986, as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." A rule, as defined in Section536.010(4), RSMo 1986, is "each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency. . . ."
Your first example concerns the Administrative Hearing Commission. You ask if it is an administrative agency, and, if so, which Commissioner is considered head of the agency. Section 621.045, RSMo 1986, requires the Administrative Hearing Commission to conduct hearings and make findings of fact and conclusions of law in cases where a license issued by any of several agencies is revoked or suspended or an agency refuses to allow an applicant to sit for examination or to be licensed. In addition, Section 621.198, RSMo 1986, authorizes the Commission to make rules of procedure for conduct of proceedings before it. Therefore, as defined by Section 536.010(1), RSMo 1986, the Administrative Hearing Commission is an administrative agency.
As to the second part of your question asking who is considered the head of the agency, Chapter 621 does not provide for a Commissioner to be designated as head of the agency. By statute, the powers and duties of the Commissioners are equal. Sections 621.015 and 621.035, RSMo 1986. In State ex rel.Public Service Commission v. Roach, 256 Mo. 669, 165 S.W. 703
(1914), the Missouri Supreme Court addressed the question of who was the "head" of the Public Service Commission. The Court opined:
 . . . this act creates the Commission, and confers upon it certain powers and authorities too numerous to mention. . . .
 . . . if the Commission itself is a head of a department, bureau, or institution, then, by parity of reasoning, it seems to me that each member thereof, under a liberal construction of the statute in the light of the vast powers they possess, and duties required to be performed by them, should likewise be held to be the heads of a department, bureau or institution.
[Emphasis added.]
Id., at 706. Following the reasoning in that case relating to the Public Service Commission, we conclude each Commissioner of the Administrative Hearing Commission is considered the head of the administrative agency for purposes of Section 105.483(3).
Your next example concerns whether the Commissioner of Securities is the head of an administrative agency. The Commissioner of Securities acts under the direction of the Secretary of State, as provided in Section 409.406, RSMo 1986. Chapter 409 sets out the powers and duties of the Commissioner. Under Section 409.413, RSMo 1986, the Commissioner is authorized to make rules; therefore, since an officer can be an agency under the definition contained in Section 536.010(1), RSMo 1986, the Commissioner of Securities is an agency head under that definition. Likewise, we conclude the Commissioner is the head of an administrative agency under Section 105.483(3).
Your next example concerns the Public Service Commission. Because the Commission is empowered to conduct hearings (Section386.390, RSMo 1986) and to make rules (Section 386.410, RSMo 1986), it is an administrative agency as defined in Section536.010(1), RSMo 1986, and for purposes of Section 105.483(3). Pursuant to State ex rel. Public Service Commission v. Roach,supra, each member of the Commission is considered the head of an agency.
Your final example involves the Commission on Human Rights. Because the Commission is empowered to conduct hearings (Section 213.075, RSMo 1986) and to promulgate rules (Section213.030, RSMo 1986), it is an administrative agency as defined in Section 536.010(1), RSMo 1986, and for purposes of Section105.483(3). Each member of the Commission is considered the head of an agency. State ex rel. Public Service Commission v.Roach, supra.
 Question 3: Who makes a "binding decision" as referred to in Section 105.483(5)?
Section 105.483(5) provides:
 Section 105.483. Each of the following persons shall be required to file a financial interest statement:
* * *
 (5) Any officer or employee of the state who has the direct administrative and operating authority to approve, disapprove or make binding decisions for any department, division or administrative agency of state government. Each statewide elected official and the director of each department, division, commission, agency, and board of regents or curators of a public institution of higher education, shall designate the persons required to report pursuant to this subdivision;
* * *
Your specific examples under this question include decisions made by a corporations clerk in the Secretary of State's Office, a branch office employee of the Department of Revenue, an assistant attorney general or other agency attorney, and an executive director of a professional registration board. We cannot opine on whether these persons make binding decisions requiring them to file a financial interest statement since Section 105.483(5) requires "[e]ach statewide elected official and the director of each department, division, commission, agency, and board of regents or curators of a public institution of higher education, shall designate the persons required to report pursuant to this subdivision."
 Question 4: What is a "binding decision" as referred to in Section 105.483(7)?
Subsection 7 of Section 105.483 requires a financial interest statement be filed by:
 (7) Any officer or employee of any political subdivision who has the direct administrative and operating authority, to approve, disapprove or make binding decisions for the political subdivision including decisions for the political subdivision including decisions relating to the issuing of licenses and permits. Each governing body of a political subdivision or special district shall designate those officers or employees who are required to report pursuant to this subdivision; except that this subdivision shall not apply to such political subdivisions which have an annual general operating receipts of less than ten million dollars, or to school districts with an annual operating budget of less than twenty million dollars;
You refer to an example involving an employee for the Recorder of Deeds. However, we cannot opine on your example concerning an employee for a Recorder of Deeds, since Section105.483(7) requires "[e]ach governing body of a political subdivision or special district shall designate those officers or employees who are required to report pursuant to this subdivision."
As a subparagraph to your fourth question, you ask whether the phrase "including decisions . . . relating to the issuing of licenses and permits" acts to limit or expand the meaning of making "binding decisions." [Emphasis added.] Although the meaning of the word "including" may vary according to its context in a statute, it is generally considered to be a word of enlargement rather than one of limitation. Kieffer v.Kieffer, 590 S.W.2d 915, 918 (Mo. banc 1979). In the context of Section 105.483(7), we perceive the use of the word "including" as enlarging the possible decisionmakers subject to the financial disclosure requirement.
 Question 5: What does "enter into any contract" mean in the context of Section 105.483(6)? For example, when a state agency secretary orders extra clerical supplies for a small amount of money, such as twenty dollars or less, is that entering into a contract to purchase? Must that secretary file a financial interest statement?
Section 105.483(6) provides:
 105.483. Each of the following persons shall be required to file a financial interest statement:
* * *
 (6) Any officer or employee of the state who has the authority to authorize or enter into any contract on behalf of the state or a department, division or administrative agency of the state or who is empowered to adopt a rule or regulation for the department, division or administrative agency or who participates in or votes on the adoption of any such rule or regulation, other than rules and regulations governing the internal affairs of the department, division or administrative agency; [Emphasis added.]
* * *
Missouri courts have recognized that the elements of a "contract" include parties competent to contract, a subject matter, a legal consideration, mutuality of agreement and mutuality of obligation. Gillen v. Bayfield, 329 Mo. 681,46 S.W.2d 571, 574-575 (1931).
Chapter 34, RSMo, sets out the requirements for state purchases. Section 34.030, RSMo 1986, provides that "[t]he commissioner of administration shall purchase all supplies for all departments of the state, except as in this chapter otherwise provided." Section 34.100.1, RSMo 1986, grants the commissioner of administration "power to authorize any department to purchase direct any supplies which in his judgment can best be purchased direct by such department." Any purchase or order made by a state agency or department in a manner contrary to the provisions of Chapter 34 or rules and regulations promulgated thereunder "shall be void and of no effect." Section 34.150, RSMo 1986. Further, "[t]he head of such department or agency shall be personally liable for the costs of such order or contract and, if already paid for out of state funds, the amount thereof may be recovered in the name of the state in an appropriate action institutes therefor." Section 34.150, RSMo 1986. Therefore, in your example, the secretary purchasing office supplies would not be required to file a financial interest statement pursuant to Section105.483(6) unless the secretary had authority under the provisions of Chapter 34 to make such a purchase.
 Question 6: What does "participates in . . . the adoption of any such rule or regulation" mean in Section 105.483(6)?
As set out above, Section 105.483(6) additionally requires filing of a financial interest statement by "any officer or employee of the state . . . who is empowered to adopt a rule or regulation for the department, division or administrative agency or who participates in or votes on the adoption of any suchrule or regulation, other than rules and regulations governing the internal affairs of the department, division or administrative agency." [Emphasis added.]
Along with your question, you cite an example of the Commissioner of Securities circulating a draft securities registration rule to his investigators for their comments. It is then asked if an investigator "participates" in the adoption of the rule if: (1) his comments result in a change in the rule; (2) he assists in drafting the rule; or (3) his comments do not result in a change in the rule.
"Participate" is defined in Webster's New World Dictionary, Second College Edition, as "to have or take a part or share with others (in some activity, enterprise, etc.)." [Emphasis in original.] In each of the examples, the investigator is participating in the rulemaking process. We must infer that the legislature intended the words "participates in" to have some meaning other than "votes on;" otherwise, the language would not have been included. Therefore, we conclude that in each of the examples, the investigator participates in the adoption of the rule or regulation by providing additional matters for consideration by the Commissioner before the rule or regulation is adopted.
 Question 7: In the Section 105.483(8) reference to officers and employees of a political subdivision having authority to enter into contracts:
 A. Is an employee of a county clerk's office entering into a contract if he purchases a small amount of clerical supplies?
 B. If a cook in each school in a school district is authorized to purchase food, is that entering into a contract?
Section 105.483(8) requires filing of a financial interest statement by:
 (8) Any officer or employee of any political subdivision who has the authority to authorize or enter into any contract on behalf of the political subdivision or who is empowered to adopt a rule or regulation for the political subdivision, or who participates in or votes on the adoption of any such rule or regulation, other than rules and regulations governing the internal affairs of the political subdivision; except that this subdivision shall not apply to such political subdivisions which have an annual general operating receipts of less than twenty million dollars.
This subsection, like Section 105.483(6) discussed in Question 5 above, does not include any restriction as to dollar amount on the contract. Therefore, in both of the examples, so long as the employee is authorized to agree to make the purchases described, he is entering into a contract on behalf of the political subdivision and is subject to the financial interest statement filing requirement if all other requirements of this subsection are met.
 Question 8: In the Section 105.483(8) reference to officers and employees of a political subdivision participating in the adoption of rules and regulations, if the manager of a city-owned swimming pool creates posted rules for the conduct of swimmers, must that manager file a financial interest statement?
As set out above, Section 105.483(8) requires filing of a financial interest statement by "[a]ny officer or employee of any political subdivision . . . who is empowered to adopt a rule or regulation for the political subdivision . . . ." If the manager of the pool is empowered to adopt the rules he has posted, then he is required to file the financial interest statement.
 Question 9: "Special districts" are not mentioned except in the second sentence of Section 105.483(7). They are not mentioned in the first sentence of Section 105.483(7) and are not mentioned at all in Section 105.483(8). Does this mean that "special districts" are not to be considered as "political subdivisions" other than as stated in this limited context or should "special districts" be considered as "political subdivisions" wherever that term is mentioned?
Section 105.483 does not define "political subdivision." Section 105.145.1(2), RSMo 1986, defines a "political subdivision" as "any agency or unit of this state, except counties and school districts, which now is, or hereafter shall be, authorized to levy taxes or empowered to cause taxes to be levied." It would appear, initially, that this definition, set out in the same chapter as Section 105.483 would apply. "When the legislature enacts a statute referring to terms which have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action." Citizens Electric Corporationv. Director of Department of Revenue, supra. However, the definition contained in Section 105.145, RSMo 1986, exempts school districts. Section 105.483 specifically refers to the applicability of this section to school districts by creating an exemption for particular districts with an annual operating budget of less than twenty million dollars. Section 105.483(2) and (7). "[I]t is presumed that the legislature does not enact meaningless provisions." Bartley v. Special School District ofSt. Louis County, 649 S.W.2d 864, 867 (Mo. banc 1983). Therefore, the legislature could not have intended to define "political subdivision" in the context of Section 105.483 using the definition set out in Section 105.145, RSMo 1986.
Article X, Section 15 of the Missouri Constitution defines political subdivisions as follows:
 Section 15. Definition of "other political subdivision". The term "other political subdivision," as used in this article, shall be construed to include townships, cities, towns, villages, school, road, drainage, sewer and levee districts and any other public subdivision, public corporation or public quasi-corporation having the power to tax."
This definition is more compatible with the intent of the legislature in enacting Section 105.483. Under this definition, any special district with taxing power would be considered a "political subdivision." Initially, then, the reference to a "special district" in Section 105.483(7) would appear to be unnecessary. "It is well established, however, that the presumption is that the legislature did not intend for any part of a statute to be without meaning or effect." Stiffelman v.Abrams, 655 S.W.2d 522, 531 (Mo. banc 1983). Therefore, the use of the phrase "special district" must be presumed to refer to any special district not included in the definition of "political subdivision," i.e., a special district without taxing power. For example, a soil and water conservation district established pursuant to Sections 278.060 to 278.155, RSMo 1986, is a special district without taxing power.
The inclusion of special districts in the second sentence of Section 105.483(7) must be read in harmony with the first sentence of that subsection. Therefore, any officer or employee of a special district without taxing power who has the direct administrative and operating authority to approve, disapprove or make binding decisions for the district is required to file a financial interest statement.
 Question 10: Do candidates for a judgeship file a financial interest statement? If so, with whom do they file, the Secretary of State or the Commission on Retirement, Removal and Discipline? Are candidates for judgeships state elected officials or local elected officials?
Section 105.483 provides in pertinent part:
 105.483. Each of the following persons shall be required to file a financial interest statement:
(1) Judges of a court of law;
 (2) Persons holding an elective office of the state or a political subdivision, whether by election or appointment, and candidates for elective office, except that, this subdivision shall not apply to elective office in political subdivisions other than school districts, with an annual budget of less than ten million dollars, or to school districts with an annual operating budget of less than twenty million dollars;
* * *
Section 105.489 provides as follows:
 105.489. The financial interest statements required to be filed pursuant to the provisions of this act shall be filed with the appropriate filing officer or officers. For the purpose of this act, the term "filing officer" is defined as:
 (1) In the case of state elected officials and candidates for such office, and all other state officials and employees, the filing officer is the secretary of state;
 (2) In the case of judges of courts of law, the filing officer shall be the commission on retirement, removal and discipline created by article V, section 24 of the constitution. Financial interest statements filed by judges shall be made available as may be provided by supreme court rule;
 (3) In the case of persons holding elective office in any political subdivision and candidates for such offices, and in the case of all other officers or employees of a political subdivision, the filing officer shall be the election authority for the political subdivision in which the person holds office or is a candidate for office. For the purpose of this section, "election authority" means a board of election commissioners in a city or county having such a board and means the county clerk in all other counties;
* * *
Sections 105.483 and 105.489 distinguish judges from state elected officials and persons holding elective office in political subdivisions since each category of persons is addressed independently in a separate subsection. As a result, candidates for judgeships cannot be considered as candidates for state elective office or for elective office in political subdivisions. In examining the language used in these sections and considering the plain meaning of this language, there is no requirement that candidates for a judgeship file a financial interest statement. Having concluded there is no such filing requirement for judicial candidates, it is unnecessary to address the remaining aspects of your question numbered 10.
 Question 11: What is the meaning of "annual general operating receipts" in Section 105.483(7)? Does the term "annual budget" in Section 105.483(2) differ from the term "annual general operating receipts" in Section 105.483(7)?
Several subsections of Section 105.483 are involved in answering this question:
 Section 105.483. Each of the following persons shall be required to file a financial interest statement:
* * *
 (2) Persons holding an elective office of the state or a political subdivision, whether by election or appointment, and candidates for elective office, except that, this subdivision shall not apply to elective office in political subdivisions other than school districts, with an annual budget of less than ten million dollars, or to school districts with an annual operating budget of less than twenty million dollars;
* * *
 (7) Any officer or employee of any political subdivision who has the direct administrative and operating authority, to approve, disapprove or make binding decisions for the political subdivision . . . ; except that this subdivision shall not apply to such political subdivisions which have an annual general operating receipts of less than ten million dollars,
or to school districts with an annual operating budget of less than twenty million dollars;
 (8) Any officer or employee of any political subdivision who has the authority to authorize or enter into any contract on behalf of the political subdivision or who is empowered to adopt a rule or regulation for the political subdivision . . . ; except that this subdivision shall not apply to such political subdivisions which have an annual general operating receipts of less than twenty million dollars.
[Emphasis added.]
In interpreting the meaning of these underscored terms, consideration must be given to "a well settled rule of statutory construction that where different language is used in the same connection in different parts of a statute it is presumed that the Legislature intended a different meaning and effect."Morgan v. Jewell Const. Co., 230 Mo. App. 425, 91 S.W.2d 638,640 (1936). Therefore, the terms "annual budget," "annual operating budget" and "annual general operating receipts" must have different meanings.
 [T]he word "budget" has a well-recognized general meaning. As applied to governments or governmental units, a "budget" is a plan or method by means of which the expenditures and revenues are so controlled for a definite period, by some budgetary authority, as to effect a balance between income and expenditures.
Graves v. Purcell, 337 Mo. 574, 85 S.W.2d 543, 548 (Mo. banc 1935). See also 12 C.J.S. Budget. Section 67.010, RSMo 1986, requires each political subdivision to prepare an annual budget, except for certain political subdivisions required to prepare an annual budget by other statutory sections. Pursuant to this section, an annual budget shall include:
 67.010. Political subdivisions to prepare annual budget — contents — expenditures not to exceed revenues. — 1. . . . . The annual budget shall present a complete financial plan for the ensuing budget year, and shall include at least the following information:
* * *
 (2) Estimated revenues to be received from all sources for the budget year . . . ;
 (3) Proposed expenditures for each department, office, commission, and other classification for the budget year . . . ;
 (4) The amount required for the payment of interest, amortization, and redemption charges on the debt of the political subdivision;
* * *
Therefore, the "annual budget" referred to in Section 105.483(2) includes the full financial plan for the political subdivision, meaning all estimated revenues and proposed expenditures — for general funds and special purpose funds — and debt service.
An "annual operating budget," as referred to in Sections105.483(2) and (7) differs from the "annual budget." Webster's New World Dictionary, Second College Edition, defines "operate" as "to be in action so as to produce an effect; act; function; work." Similarly, Black's Law Dictionary, Sixth Edition, defines "operating expenses" as "[e]xpenses incurred in the course of ordinary activities of an entity." Therefore, the "annual operating budget" would include those revenues and expenditures involved in the actual day to day work of the school district, meaning all general and special purpose funds, except debt service.
Sections 105.483(7) and (8) refer to "annual general operating receipts" of a political subdivision. "Receipts" has been defined as "that which is received; that which comes in, in distinction from what is expended, paid out, sent away, and the like." 75 C.J.S. Receipt. Webster's New World Dictionary, Second College Edition, defines "general" as "of, for, or from the whole or all; not particular nor local." As noted previously, the same source defines "operate" as "to be in action so as to produce an effect; act; function; work." Therefore, we conclude that "annual general operating receipts" refers to total receipts minus those receipts derived for special purpose funds.
 Question 12: In determining "annual general operating receipts" and "annual budget," is income that is produced by the ownership of a political subdivision's electric plant, water treatment plant or hospital, for example, included in such a budget? If not, what are the distinctions between which types of revenue-generating services should be included and which types should not be?
As discussed in the answer to Question 11, "budget" and "general operating receipts" have different meanings. An annual budget reflects all estimated revenues and proposed expenditures, for general funds and special purpose funds, including debt service, and, therefore, all sources of revenue including revenue of an electric plant, water treatment plant or hospital, would be included. However, general operating receipts would include only those receipts not derived for special purpose funds. Therefore, receipts of a special purpose fund such as for an electric plant, water treatment plant or hospital would not be included as general operating receipts.
 Question 13: Are non-compensated members of state boards and commissions (as well as local boards and commissions) considered officers or employees under Section 105.483(5), (6), (7) and (8)? What is a definition of officer?
Section 105.483 does not define "officer." Courts have recognized:
 It is not possible to define the words "public office or public officer." The cases are determined from the particular facts, including a consideration of the intention and subject-matter of the enactment of the statute or the adoption of the constitutional provision.
State ex rel. Scobee v. Meriwether, 200 S.W.2d 340, 341 (Mo. banc 1947), quoting State ex inf. McKittrick v. Bode,342 Mo. 162, 113 S.W.2d 805, 806 (1938). In determining whether one is a public officer, a delegation of some part of sovereign power is an important factor. Kirby v. Nolte, 349 Mo. 1015,164 S.W.2d 1, 8 (Mo. banc 1942). As the courts have addressed the question of who is an officer, whether the individual receives compensation has not been a factor for consideration. Even in the absence of compensation, members of state or local boards and commissions are "officers" if they are invested with some portion of the sovereign functions of government.
WHAT TIME PERIOD IS COVERED BY THE FINANCIAL INTEREST STATEMENT AND WHEN MUST DISCLOSURE BE MADE?
 Question 14: Section 105.487 provides when a financial interest statement shall be filed. The majority are filed between April 15 and May 1 each year. However, the year covered by the statement is not defined as when it begins and ends. Is it a calendar year or is it the year between April 15 and April 14?
Section 105.487 provides:
 The financial interest statements shall be filed at the following times, but no person is required to file more than one financial interest statement in any calendar year:
 (1) Each candidate for elective office shall file a financial interest statement no later than the forty-fifth day after the last day for filing for the election at which he seeks nomination or election, and the statement shall be for the twelve months prior to the closing date, except that in the event an individual does not become a candidate until later than the forty-fifth day after the last day for filing for election, the statement shall be filed within ten days of his becoming a candidate. An individual required to file a financial interest statement because of his candidacy for office prior to a primary election in accordance with this section is also required to amend such statement within seven days prior to the following general election to reflect any changes in financial interest during the interim. The appropriate election authority shall provide to the candidate at the time of filing for election written notice of the candidates' obligation to file under this act and the candidate shall sign a statement acknowledging receipt of such notice;
 (2) Each person appointed to office and each official or employee described in section 1 of this act who is not otherwise covered in this subsection shall file the statement within thirty days of such appointment or employment;
 (3) Every other person required by this act to file a financial interest statement shall file the statement annually not earlier than the fifteenth day of April but not later than the first day of May;
 (4) The deadline for filing any statement required by this act shall be 5:00 p.m. of the last day designated for filing the statement. When the last day of filing falls on a Saturday or Sunday or on an official state holiday, the deadline for filing is extended to 5:00 p.m. on the next day which is not a Saturday or Sunday or official holiday. Any statement required within a specified time shall be deemed to be timely filed if it is postmarked not later than midnight of the day previous to the last day designated for filing the statement.
We assume your question relates to subsection 3 of Section105.487 since you reference the filing period between April 15 and May 1. Although this subsection does not specify the reporting period to be covered in the financial interest statement, several references in Section 105.485 concerning contents of the statement provide guidance. For example, Section 105.485.2(4) requires filing of the name and address of the person furnishing or receiving consideration for a transfer of real property "if the property was transferred during the preceding calendar year." [Emphasis added.] Section105.485.2(7) requires filing of the name and address of certain not-for-profit corporations and associations if the person filing the statement "was an officer, director, employee or trustee at any time during the preceding calendar year." [Emphasis added.] Based on these references, for purposes of subsection 3 of Section 105.487, we conclude that the filing period covered by the financial interest statement is the calendar year preceding filing.
 Question 15: Section 105.485.2 states: "Each person required to file a financial interest statement shall file the following information for himself, his spouse and dependent children in his custody for the twelve months preceding the date of filing the statement . . . ." Does the underlined phrase modify "custody" or "financial interest statement"?
The doctrine of the "last antecedent" is a rule of statutory construction holding that "relative and qualifying words, phrases or clauses are to be applied to the words or phrase immediately preceding and are not to be construed as extending to or including others more remote." Elliott v.James Patrick Hauling, Incorporated, 490 S.W.2d 284, 287
(Mo.App. 1973). This rule leads to the conclusion that the underlined phrase modifies "custody."
As noted above, there are several references in other subsections of Section 105.485 referring to filing requirements for the preceding calendar year. Based upon this entire section, if the reference to the "twelve months preceding the date of filing the statement" modifies the information to be filed in the financial interest statement and not custody of dependent children, then it would conflict with the provisions referring to a calendar year. All statutes applicable to the same subject should be harmonized to preserve the integrity of both. Conrad v. Bowers, 533 S.W.2d 614, 622 (Mo.App. 1975). Therefore, we conclude that the reference to the "twelve months preceding the date of filing the statement" modifies custody.
 Question 16: When is the first report due? Since the law does not go into effect until January 1, 1991, can it request information for a time period before that time, that is, for the calendar year 1990?
Article I, Section 13 of the Missouri Constitution provides that no law retrospective in its operation shall be enacted.Danaher v. Smith, 666 S.W.2d 452, 455 (Mo.App. 1984). As a general rule, statutes are presumed to operate prospectively "unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication." Lincoln CreditCo. v. Peach, 636 S.W.2d 31, 34 (Mo. banc 1982), appealdismissed, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942
(1983). Since this statute states it is to become effective January 1, 1991, there is no basis to interpret a retroactive operation was intended. We conclude that the first filings of financial interest statements will be due on the dates specified by statute in 1991.
"[A] statute is not retroactive merely because it draws upon antecedent facts for its operation." Home Indemnity Co.v. State of Missouri, 78 F.2d 391, 394 (8th Cir. 1935). Therefore, a financial interest statement required to be filed in 1991 may be required to include information related to a time period before January 1, 1991, such as information for calendar year 1990.
 Question 17: If someone who would normally be required to report resigns his position before April 15, 1991, does he still have to file a report? If so, would he have to report if he resigned his position before January 1, 1991?
Section 105.483 in subsections (1) through (8) lists the persons required to file a financial interest statement. In each instance, persons are referred to by the positions they hold or the authority they have. All references use present tense language suggesting that the individuals are holding those positions and possessing the authority at the time they are required to file the financial interest statement. Furthermore, the statute makes no reference to a filing requirement for persons in the circumstances contained in your question. Therefore, based upon the plain meaning of the language in Section 105.483, we conclude there is no requirement for filing a financial interest statement for persons who have resigned their positions prior to the time for filing.
WHAT MUST BE DISCLOSED?
 Question 18: What is the definition of "income" as referred to in Section 105.485.2(1)? Is there a difference between "income" and "earned income" as referred to in Section 105.485.2(3)?
Pursuant to Section 105.485.2,
 2. Each person required to file a financial interest statement shall file the following information for himself, his spouse and dependent children in his custody for the twelve months preceding the date of filing the statement . . .
 (1) The name and address of each of the employers of such person from whom income of one thousand dollars or more is received during the year covered by the statement;
* * *
 (3) The name and address of any other source not reported pursuant to subdivisions (1) and (2) and subdivisions (4) through (9) of this subsection from which such person received one thousand dollars or more of earned income during the year covered by the statement, including, but not limited to, any income otherwise required to be reported on any tax return such person is required by law to file;
[Emphasis added.]
* * *
Missouri statutes do not define "income" and "earned income" for purposes of Section 105.485. For guidance, we look to definitions found in the United States Internal Revenue Code. "Earned income" is defined in26 U.S.C.A. Section 32(c)(2)(A) as "(i) wages, salaries, tips, and other employee compensation, plus (ii) the amount of the taxpayer's net earnings from self-employment for the taxable year. . . . "
The reference in Section 105.485.2(1) to "income" received from employers appears to be what is defined by the I.R.C. as "earned income." However, the later reference to "earned income" in Section 105.485.2(3) as "including, but not limited to, any income otherwise required to be reported on any tax return such person is required by law to file" does not comport with the I.R.C. definition. As noted previously, the word "including" is generally considered to be a word of enlargement rather than one of limitation. Kieffer v. Kieffer, supra,590 S.W.2d at 918. Income otherwise required to be reported on a tax return includes, but is not limited to, gains derived from dealings in property, interest, rents, royalties, dividends and annuities. See 26 U.S.C.A. Section 61(a).
Therefore, we conclude that the reference to "income" in Section 105.485.2(1) refers to wages, salaries and other employee compensation derived from one's employer. The reference to "earned income" in Section 105.485.2(3) includes any income required to be reported on a tax return.
 Question 19: How is the ten thousand dollar value referred to in Section 105.485.2(4) and (5) determined?
 A. For a piece of real property, is it the purchase price, appraised fair market value, assessor's valuation or possible selling price? If the appraisal value is used, must the property be appraised for each reporting period?
 B. As to the value of stock and other equity interests, when is it valued? At the beginning of the year, the end, or at its highest value during the year? And if the equity interest is held in a mutual fund, how is it valued? Or if the equity interest is a pension fund, how is that valued?
 C. For example, a Missouri state employee may have deferred nine thousand dollars of his compensation into PEBSCO with five thousand dollars into a mutual fund and four thousand into another equity. Each earns interest and together they value over ten thousand dollars, but not separately. Are they reported?
Sections 105.485.2(4) and (5) provide the financial interest statement shall include the following information:
 (4) The location by county, the subclassification for property tax assessment purposes, the approximate size and a description of the major improvements and use for each parcel of real property in the state, other than the individual's personal residence, having a fair market value of ten thousand dollars or more in which such person held a vested interest including a lease-hold for a term of ten years or longer, and, if the property was transferred during the preceding calendar year, the name and address of the person furnishing or receiving consideration for such transfer;
 (5) The name and address of any entity in which such person owned stock, bonds or other equity interest with a value in excess of ten thousand dollars; except that, if the entity is a corporation listed on a regulated stock exchange, only the name of the corporation need be listed; [Emphasis added.]
* * *
According to subsection (4), the value of real property should be determined by "fair market value." As Missouri courts have defined the term, "[f]air market value is essentially the price the property would bring by sale to a willing owner from a buyer who is also under no compulsion to buy." Larabee v. Cityof Kansas City, 697 S.W.2d 177, 182 (Mo.App. 1985). Section105.485.2(4) does not explain the procedure for determining fair market value. However, courts have recognized that "[a]n owner of property is qualified to give his opinion as to the value of his own property even though he is not a real estate expert."Klein v. General Electric Company, 714 S.W.2d 896, 904
(Mo.App. 1986). "This qualification of the landowner rests on the assumption that an owner is familiar with his property and its actual and potential uses." Id. No language in Section105.485.2(4) imposes a requirement that an appraisal of the property be performed. However, while the owner may express an opinion of the value of his property, we note the provision in Section 105.492.4 (Section 6.4 of House Bills Nos. 1650 and 1565) that "[a]ny person who purposefully misrepresents or omits any facts required to be contained in any financial interest statement filed as required by sections 1 to 10 of this act [Sections 105.483 to 105.498] shall be guilty of a class B misdemeanor."
As to valuation of stock,
 [T]here is no universally infallible index of fair market value. All valuation is necessarily an approximation. Where, however, the property to be valued consists of securities traded on a stock exchange, the general rule is that the average exchange price quoted on the valuation date furnishes the most accurate, as well as the most readily ascertainable, measure of fair market value.
Amerada Hess Corporation v. Commissioner of Internal Revenue,517 F.2d 75, 83 (3rd Cir. 1975). Section 105.485.2(5) requires the filing of "[t]he name and address of any entity in which such person owned stock." [Emphasis added.] The use of the past tense reflects the intent that any stock owned by the person required to file a financial interest statement at any time in the reporting year must be disclosed if its value exceeded $10,000. Consequently, we conclude that any owned stock reaching a value of $10,000 at any time in the filing year must be disclosed.
The next part of your question concerns how a mutual fund is to be valued. Black's Law Dictionary, Sixth Edition, defines a mutual fund as follows:
 A fund managed by an investment company in which money is raised through the sale of stock and subsequently invested in publicly traded securities. The investment performance of the mutual fund depends on the performance of the underlying investments.
Therefore, the value of an investment in a mutual fund should be determined in the same way stocks are valued. If at any time during the reporting year the value of an investment in a mutual fund exceeds $10,000, it should be reported on the financial interest statement.
Your next example concerns a pension fund and how such an interest should be valued. Because your question does not include information regarding the type of pension plan or the ownership interest, we cannot address your question as it relates to a pension plan.
Your next example concerns a Missouri state employee who has deferred nine thousand dollars of his compensation into PEBSCO with five thousand dollars into a mutual fund and four thousand into another equity. As you state in your example, each has earned interest (or appreciated in value) and together they value over ten thousand dollars, but not separately. You ask if they should be reported. We presume your question relates only to deferred compensation which the employee has designated to be invested in mutual funds.
Black's Law Dictionary, Sixth Edition, defines deferred compensation as follows:
 Compensation that will be taxed when received and not when earned. . . . Such contributions will not be taxed to the employee until the funds are made available or distributed to the employee (e.g., upon retirement).
Section 105.910, RSMo 1986, provides for establishment of the "Missouri State Public Employees Deferred Compensation Fund." Section 105.915, RSMo 1986, provides in part:
 105.915. Office of administration to administer plan — written agreement required — approved investments. — 1. Subject to the approval of Missouri state public employees deferred compensation commission, the office of administration shall establish and administer a deferred compensation plan for the employees of the state of Missouri. Participation in such plan shall be by a specific written agreement between such employees and the state which shall provide for the deferral of such amount of compensation as requested by the employee. Participating employees must authorize that such deferrals be made from their wages for the purpose of participation in such program.
 2. Notwithstanding any other provision of this code, funds held for the state by the Missouri public employees deferred compensation commission pursuant to written deferred compensation agreement between the state and participating employees may be invested, in such investments as are deemed appropriate by the office of administration and approved by the commission, including, but not limited to, life insurance or annuity contracts or mutual funds. It is further provided that all such insurance, annuities, mutual funds, or other such investment products to be offered pursuant to this plan shall have been reviewed and selected by the commission based on a competitive bidding process as established by such specifications and considerations as are deemed appropriate by the commission. Such investments shall not be construed to be a prohibited use of the general assets of the state.
* * *
Because Missouri state employees' participation in the deferred compensation plan may involve several different types of investments, we believe value should be calculated for each individual investment. Therefore, in your example, the person filing a financial interest statement would not report his deferred compensation because no one investment has a value of $10,000.[1]
 Question 20: Section 105.485.2(3) requires disclosure of the name and address of any other source of earned income of one thousand dollars or more. Does this require persons such as doctors, lawyers, accountants and other business and professional people who are members of boards or commissions to report the names and addresses of their clients who may pay an individual fee of over one thousand dollars directly to the reporting person?
As discussed in answer to Question 18, Section 105.485.2(3) requires the financial interest statement to report the name and address of any other source of earned income including "any income otherwise required to be reported on any tax return such person is required by law to file." This information is required only from sources not reported in subsections (1) and (2) and (4) through (9). Section 105.485.2(2) requires the financial interest statement to report "[t]he name and address of each sole proprietorship which he owns; [and] the name and address of each general partnership and joint venture in which he is a partner or participant. . . ." Since the clients referred to in your question will have made payment to the proprietorship or partnership and that entity has been disclosed pursuant to subsection (2), the plain language of subsection (3) does not require disclosure of individual clients.
MISCELLANEOUS QUESTIONS.
 Question 21: Where does a reporting person file if they live outside the state if they are an officer or employee of a political subdivision that is situated in more than one county? Section 105.489(4) requires a reporting person to file with the "election authority having jurisdiction for the residence of the person filing." A multi-county school district located next to the state's border may have an employee who lives in another state. Where does that person file?
Section 105.489 provides:
 105.489. The financial interest statements required to be filed pursuant to the provisions of this act shall be filed with the appropriate filing officer or officers. For the purpose of this act, the term "filing officer" is defined as:
* * *
 (3) In the case of . . . all other officers or employees of a political subdivision, the filing officer shall be the election authority for the political subdivision in which the person holds office . . . . For the purpose of this section, "election authority" means a board of election commissioners in a city or county having such a board and means the county clerk in all other counties;
 (4) If a political subdivision is situated in more than one county, the filing officer shall be the election authority having jurisdiction for the residence of the person filing.
Although Section 105.489(3) does not provide for such a situation, in determining the intent of the legislature, "the objectives of the act are to be considered, and the construction must be reasonable and logical to give meaning to the statutes." State ex rel. Rhodes v. Crouch, 621 S.W.2d 47, 49
(Mo. banc 1981). Therefore, in the event an officer or employee of a political subdivision is required to file a financial interest statement but does not reside in Missouri, the statement should be filed with the election authority having jurisdiction for the principal place of employment of the person filing.
 Question 22: Section 105.491.2(1) allows a filing officer, other than the Secretary of State, to "charge a reasonable filing fee to cover the actual pro-rata cost of providing such services as approved by the secretary of state." Does this provision require the Secretary of State to approve local filing fees and does this filing fee require a popular vote in accordance with the Hancock Amendment?
Section 105.491.2 provides:
 2. Each filing officer other than the secretary of state shall assist the secretary of state in furnishing forms to persons required to file financial statements and shall:
 (1) Maintain a filing system for financial statements filed with his office and preserve such statements for a period of not less than five years and may charge a reasonable filing fee to cover the actual pro-rata cost of providing such services as approved by the secretary of state;
 (2) Make any financial statement filed with him available for public inspection and copying within a reasonable time after filing and permit copying of any financial statement at a reasonable expense to cover the cost of such services;
 (3) The secretary of state and each other filing officer shall keep a public record of all persons inspecting or copying financial statements.
The plain language of Section 105.491.2(1) provides for approval by the Secretary of State of the "reasonable filing fee" which may be charged by filing officers other than the Secretary of State. This refers to local filing fees since Section 105.489(3) identifies as filing officers "the election authority for the political subdivision . . . ." Note, however, that Section 105.491.2(2) allows a filing officer to charge "a reasonable expense to cover the cost" of permitting copying of filed financial interest statements without requiring approval of the Secretary of State.
We cannot opine on the second part of your question relating to whether the Hancock Amendment requires a popular vote since it has been the long-standing practice of this office not to opine on matters where related litigation is pending. Presently before the Missouri Supreme Court is a case involving the application of the Hancock Amendment to an increase in ambulance district fees without a vote of the people, GeorgeKeller, et. al. v. Marion County Ambulance District, et al.,
appeal pending, Missouri Supreme Court No. 72979. Because of this pending litigation, we respectfully decline to opine on the second part of your question.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Attachment
[1] We recognize that a state employee participating in the deferred compensation plan is not the registered owner of shares of the mutual fund or funds in which the employee has selected to invest. As stated in the State of Missouri, Deferred Compensation Plan for Public Employees, Restated Plan Document, Section 6.03, "The rights of the PARTICIPANT (state employee) created by this PLAN shall be those of a general creditor of the EMPLOYER (State of Missouri), and in an amount equal to the fair market value of the deferred account maintained with respect to the PARTICIPANT, determined as if the deferred amounts had been invested pursuant to the PARTICIPANT'S investment specification." Because the value of the employee's deferred compensation account is directly tied to the value of shares of a mutual fund or funds which the employee has selected, we consider the value attributable to each mutual fund to be ownership or an equity interest in a mutual fund for purposes of Section 105.485.2(5). The Statement of Values provided quarterly to each employee participating in the deferred compensation plan lists each mutual fund selected by the employee and the value attributable to each fund.
ATTACHMENT A
Under recently passed House Bills 1650 and 1565, the Secretary of State is required to create and publish financial disclosure forms with instructions for the disclosure of financial interests by certain public officials. In attempting to carry out this duty the following questions have arisen:
A. Who is covered by the law?
 B. What time period is covered for the reporting period?
C. What must be disclosed?
In addition several miscellaneous questions have been raised. The following is an outline of the issues and questions raised by House Bills 1650 1565.
I. WHO IS COVERED BY THE LAW.
A. In section 105.470.1(3) lobbyist is defined as, "any person, including persons employed by or representing federal or state agencies and all political subdivisions thereof, who acts inthe course of his employment . . . for the purpose of attempting to influence the taking, passage, amendment, delay or defeat of any legislative action or any action by the executive branch or any agencyor commission of state government; . . ."
Although this section is limited by the definition of witness in section 105.470.1(5), that witness limitation appears to only cover activities involving legislation and not activities involving "action by the executive branch." And even if this limitation would apply, there is the basic issue of what type of activities are those to legally conclude that the person carrying out those activities is a lobbyist.
For example, if the Commissioner of Securities brings security fraud investigations to the attention of the Attorney General and seeks criminal prosecutions, is the Commissioner of Securities a "lobbyist"? Or what if a executive director for a professional licensing board asks the Secretary of State to refuse to grant certain types of names for professional corporations, is that lobbying? And there is the question of an administrator of a state agency attempting to have the Secretary of State compile a list of all new corporations on a periodic basis for use by that agency. Is that influencing the taking of any action? Finally, is it lobbying if someone in the Governor's office requests an executive agency to delay the implementation of proposed regulations?
B. Section 105.482.1(3) refers to "The head of each department, division and administrative agency of state government . . ." as having to file a financial disclosure report.
The Reorganization Act of 1974 took all departments, boards, commissions, divisions, bureaus and other agencies and organized them into twelve departments of state government (including the office of administration). These departments, in turn, filed their organization plans with the Secretary of State, the Revisor of Statutes, and the Commissioner of Administration indicating which divisions they had in their departments. Should that filing act as a definition of "division" under H.B. 1650 and 1565? Also, the term "administrative agency" was not used in the Reorganization Act. Thus, there are the question as to who works for an "administrative agency" and who is the head of such an agency?
For example, are Administrative Law Judges considered heads of an "administrative agency"? And if so, which judge is considered the head of the agency? And, is the Commissioner of Securities, whose position is defined by statute, the head of an administrative agency? Finally, what about the Public Service Commission? Are all the commissioners considered the head of an agency? The same question applies to the members of the Commission on Human Rights? Is each commissioner a head of an administrative agency?
C. Section 105.482.1(5) requires, "Any officer or employee of the state who has the direct administrative and operating authority to approve, disapprove or make binding decisions . . .", to file a financial disclosure statement.
Who makes a "binding decision"? For example does this include a decision by a corporation's clerk in the Secretary of State's Office to file or not file a new corporation or to grant the use of a corporate name? That clerk has the direct authority to decide if the Articles of Incorporation conform to law and then issue a corporate charter and further that clerk has the authority to decide if the corporate name chosen is or is not deceptively similar to another corporation's name. If it is deceptively similar, that clerk may reject the name. And there is the question of an employee of the Department of Revenue at a branch office refusing to issue a car title because there is no mileage statement provided or refusing to issue license plates because the owner can not show insurance coverage. Are these binding decisions? Or does the decision to pursue litigation or settle a case by an Assistant Attorney General or other agency attorney (e.g. Department of Revenue or Department of Social Services) involve making a binding decision? Finally, does the decision by an executive director of a professional registration board to investigate a licensed professional require that person to file a financial disclosure form?
D. Subdivision (7) of section 105.482.1 also requires officers and employees of any political subdivision to file a financial report if they have the administrative and operating authority to approve, disapprove or make binding decisions for the political subdivision.
Thus, the same issue of who is required to file a financial interest statement arises for a political subdivision as for a state agency. For example, is an employee for the Recorder of Deeds, who refuses to record a general warranty deed because of its failure to be acknowledged correctly by a notary public, making a binding decision? Further as applies to political subdivisions, there is the additional language of, "making binding decisions for the political subdivision including decisions . . . relating to the issuing of licenses and permits." Does this additional language act to limit or expand the meaning of make binding decisions?
E. Section 105.482.1(6) requires "Any officer or employee of the state who has the authority to authorize or enter into anycontract. . . or who is empowered to adopt a rule . . . or whoparticipates in or votes on the adoption of any such rule orregulation . . ."
What does, "enter into any contract" mean? When a state agency secretary orders some extra clerical supplies for a small amount of money such as twenty dollars or less, is that entering into a contract to purchase? Must that secretary file a financial statement?
Likewise what does "participates in. . . the adoption of any such rule or regulation," mean? For example a state agency may circulate draft rules to various employees for comments. These employees may have to enforce or follow such rules. Sometimes their comments are made in writing and sometimes verbally. Do such comments, especially if they result in changes or additions to the rule, result in participating in the adoption of any such rule. Does this apply to someone who helps draft the rule? Or does it also cover any person who may have commented on the rule or submitted a memo commenting on the rule? An example of this would be the Commissioner of Securities circulating a draft securities registration rule to his investigators.
F. Subdivision (8) of section 105.482.1 also requires officer and employee of any political subdivision to file a financial report if they have, "the authority to . . . enter into any contract.. . or . . . participates in . . . the adoption of any such rules andregulations".
The same issue of who is required to file a financial interest statement arises for a political subdivision as for a state agency. For example, is an employee for County Clerk's Office entering into a contract if they purchase a small amount of clerical supplies or if cooks for each school in a school district have authority to purchase food?
An example involving the adoption of rules by a political subdivision is that of a manager of a city owned swimming pool. If that manager creates posted rules for the conduct of swimmers, must that manager file a financial disclosure statement?
G. Are officers and employees of special districts required to file financial interest statements?
Special districts are not mentioned except in the second sentence of subdivision 7 of subsection 1 of section 105.482. They are not mentioned in the first sentence nor at all in subsection 8 of subsection 1 of section 105.482. Does this mean that "special districts" are not to be considered as political subdivisions other than as stated in this limited context or should special districts be considered as political subdivisions wherever that term is mentioned? Further school districts, which are considered as special districts, appear to be considered a political subdivision by the last sentence of subdivision 7.
H. Section 105.482.4(2) provides that, "In the case of judges of courts of law, the filing officer shall be the commission . . ." whereas section 105.482.4(1) makes the Secretary of State the filing officer for, "state elected officials and candidates."
A ruling by the Cole County Circuit Court has indicated that the Commission should not be the filing officer but that the Supreme Court should decide with whom judges should file. Nevertheless, there is an issue whether candidates for a judgeship file a financial disclosure statement and if they do, with whom do they file? The Secretary of State or with that official designated by the Missouri Supreme Court? Although subdivision 1 of subsection 4 mentions candidates, it limits that to candidates which are candidates for "state elected officials." And subdivision 2 of subsection 4 only mentions judges and not candidates for judges. Further, are candidates for judgeships, state elected officials or local elected officials?
I. Under section 105.482.1(7) officers and employees of political subdivisions, "which have an annual general operating receipts
of less than ten million dollars" do not have to report. This same limitation applies to school districts except the limitation is twenty million dollars.
Further in section 105.482.1(2) elected officials and candidates do not have to file a financial disclosure statement if the political subdivision has, "an annual budget of less than ten million dollars" or twenty million for school districts.
Does the term "annual budget" as referred to in section105.482.1(2) differ from the term "annual general operating receipts" as referred to in section 105.482.1(7)?
Finally in determining annual general operating receipts and/orannual budget is income that is produced by the ownership of a political subdivision's electric plant, water treatment plant or hospital, for example, included in such a budget? If not, what are the distinctions between which types of revenue generating services should be included and which types should not in a political subdivisions annual general operating receipts or annual budget?
J. Under section 105.482.1 subdivisions (5) (6) (7) and (8) refer to "officer or employee of the state". Many persons serve on state and local governmental boards without compensation. For example the members of the Missouri Commission on Human Rights, Missouri Advisory Council on Alcohol and Drug Abuse, State Veterans Board, Horse Racing Commission, State Lottery Commission and the Coordinating Board of Higher Education serve without compensation. As well members of St. Louis City, St. Louis County and Kansas City Board of Election Commissioners serve without pay. Are the members on these boards considered officers or employees of the state under subdivisions (5) (6) (7) and (8)? What is a definition of officer under those sections?
2. WHAT TIME PERIOD IS COVERED BY THE FINANCIAL INTEREST STATEMENT AND WHEN MUST DISCLOSURE BE MADE?
A. Section 105.482.3 provides when a financial interest statement shall be filed. The majority are filed between April 15 and May 1 each year. However, the year covered by the statement is not defined as when it begins and ends. Is it a calendar year or is it the year between April 15 and April 14?
Section 105.482.2.2 (1) (3) provide that the period is a year with the term, "during the year covered by the statement." And subsections 105.482.2.2 (4) and (7) refer to "preceding calendar year". Subsection 105.482.2.2 (8) refers to "value per source per year".
Section 105.482.2.2 also may be interpreted as to what time period the financial statement must cover. That subsection states, "Each person required to file a financial interest statement shall file the following information for himself, his spouse and dependent children in his custody for the twelvemonths preceding the date of filing the statement. . ." The question here is what does this phrase modify, custody or financial interest statement? Rules of grammar would indicate custody; however, if it modifies the term "financial interest statement", then the year covered is the year preceding the date of filing the statement.
B. When is the first report due? Since the law does not go into effect until January 1, 1991, can it request information for a time period before that time, that is for the calendar year of 1990?
C. If someone, who would normally be required to report, resigns their position before April 15, 1991 do they have to report? If they do, would they have to report if they resigned their position before January 1, 1991?
3. WHAT MUST BE DISCLOSED?
A. Subdivision (1) of section 105.482.2.2 states that reporting persons must report "income of one thousand dollars or more" while subdivision (3) states the reporting person must report the source of "one thousand dollars or more of earned income
during the year. . ."
What exactly is the definition of income? Is there a difference between "income and earned income"? The statute says earned income is, "any income otherwise required to be reported on any tax return." This definition is not stated for "income".
B. Subdivision (4) of section 105.482.2(4) states that reporting persons must report any interest they have in property, other than their personal residence, which has, "a value of ten thousand dollars or more. . ." Also subdivision (5) of 105.482.2 states that a reporting person must report any equity interest in an entity (stock, bonds or other equity interest) in which the value was in excess of ten thousand dollars.
How is this ten thousand dollar value arrived at? For example a state employee may own a vacation cabin at the Lake of the Ozarks. What is the value of this property? Is it the purchase price, appraised fair market value, assessor's valuation or possible selling price? If the appraisal value is used, must the property be appraised for each reporting period? When is the value made?
As to the value of stock and other equity interests, when is it valued? At the beginning of the year, the end, or at its highest value during the year? And if the equity interest is held in a mutual fund, how is it valued? Or if the equity interest is a pension fund, how is that valued? For example a Missouri state employee may have deferred nine thousand dollars of his compensation into PEBSCO with five thousand dollars into a mutual fund and four thousand into another equity. Each earns interest and together they value over ten thousand dollars, but not separately. Are they reported?
C. Subdivision 3 of section 105.482 requires disclosure of the name and address of any other source of earned income of one thousand dollars or more. Does this require reporting by persons such as doctors, lawyers, accountants and other business and professional people who have clients who may pay an individual fee of over one thousand dollars directly to the reporting person (as opposed to a professional corporation)?
4. MISCELLANEOUS QUESTIONS
In addition to the three main issues stated above there are several other questions that do not fall into those groupings. They are:
1. Where does a reporting person file if they live outside the state if they are an officer or employee of a political subdivision that is situated in more than one county? Section105.482.4(4) requires a reporting person to file with the "election authority having jurisdiction for the residence of the person filing". A multi-county school district located next to the state's border may have an employee who lives in another state. Where does that person file?
2. Section 105.482.5.2(1) allows a filing officer, other than the secretary of state, to, "charge a reasonable filing fee to cover the actual pro-rata cost of providing such services as approved by the secretary of state." Does this provision require the secretary of state to approve local filing fees and does this filing fee require a poplar vote in accordance with the Hancock Amendment?